Robert MACHOTKA, Plaintiff-Appellant,†

v.

VILLAGE OF WEST SALEM, Defendant-Respondent.

Court of Appeals

*No. 99–1163. Submitted on briefs November 18, 1999.—Decided January 13, 2000.*

## 2000 WI App 43

(Also reported in 607 N.W.2d 319.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Mark B. Hazelbaker* of Sun Prairie.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Jeffrey R. Pawelski* and *Thomas S. Sleik, of Hale, Skemp, Hanson, Skemp & Sleik* of La Crosse.

Before Eich, Vergeront and Deininger, JJ.

¶ 1.   EICH, J.   Robert Machotka appeals from a summary judgment dismissing his open records law mandamus action against the Village of West Salem. Machotka sought to ascertain the names of the ultimate purchasers of municipal bonds issued by the Village. The sole issue is whether Machotka is entitled to the sought-after information under the "contractors' records" provision of the open records law, WIS. STAT. § 19.36(3) (1997–98).[1] We conclude that he is not, and we therefore affirm the judgment.

¶ 2.   The facts are not in dispute. Machotka made several open records requests to the Village seeking,

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

among other things, the names of the ultimate purchasers of municipal bonds issued by the Village over a seventeen-year period. The Village responded to each request by providing Machotka with all the information it had in its possession on the subject and advising him that it could not provide information which it neither possessed nor had access to. With regard to the 1993 bond issue—the only one before us on this appeal—the Village advised Machotka that the bonds were sold to Robert W. Baird & Company, Inc., and registered in the name of Cede & Company, as nominee of the Depository Trust Company.[2] The Village stated that it had no records of ownership of the bonds after the initial sale, and thus had no information as to who currently owned them.

---

[2] The Village ordinance authorizing the 1993 issue provided that the entire issue was to be purchased by Baird, who would act as the underwriter. The bonds were distributed through the Depository Trust Company, and the initial registered owner was the Depository Trust Company's nominee, Cede & Company.

As to the specifics of such transactions, Baird explains that it is standard industry practice not to reveal the names of the ultimate purchasers.

> As the underwriter of the above-mentioned transaction, Robert W. Baird was the direct purchaser of [the] bonds. However, we re-offered these securities to private investors (e.g. individuals, banks, insurance companies, mutual funds) as a standard underwriting procedure. It is an industry-wide practice to withhold disclosure of the names of individual investors whom underwriters sell their bonds to. Primarily, this convention is adhered to in order to preserve the relationship between an underwriter and its patrons. As a corollary, this confidentiality ensures a more liquid and efficient market for all municipal securities. This translates into an active demand for issues of [this] type, thereby insuring municipal issuers access to financial markets at attractive market interest rates.

¶ 3. Machotka then brought this mandamus action seeking an order requiring the Village "to disclose the bond registry for all bonds issued and expenses related thereto during the past twenty years." As indicated, Machotka's arguments on appeal are confined to the Village's 1993 bond issue. The Village moved for summary judgment, arguing that it had fully complied with the law by providing Machotka with all the information in its possession. The court granted the motion and dismissed Machotka's complaint.

¶ 4. We review a summary judgment *de novo*, employing the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). It is a well-known methodology which need not be repeated here. *See State Bank of La Crosse v. Elsen*, 128 Wis. 2d 508, 511–12, 383 N.W.2d 916 (Ct. App. 1986). Generally, we will affirm the circuit court's decision granting summary judgment if the record demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733 (Ct. App. 1984).

¶ 5. The underlying purpose of Wisconsin's open records law is declared in WIS. STAT. § 19.31:

> In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employes who represent them. Further, providing persons with such information is declared to be an essential

function of a representative government and an integral part of the routine duties of officers and employes whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

¶ 6. In furtherance of that policy, WIS. STAT. § 19.35(1) gives any person "the right to inspect any record." WISCONSIN STAT. § 19.32(2) defines "record" as "any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded . . . which has been created or is being kept by an authority," and § 19.32(1) defines "authority" as including "a state or local office, . . . board, . . . or public body corporate and politic . . . ." Neither party disputes the importance of the public's right to access to public business. What is in dispute is the applicability of the "contractors' records" provisions of the open records law, which establishes an exception to the general rule that a public authority need only provide information which it has either created and/or has in its custody.

Each authority shall make available for inspection and copying under s. 19.35(1) any record produced or collected under a contract entered into by the authority with a person other than an authority to the same extent as if the record were maintained by the authority. This subsection does not apply to the inspection or copying of a record under s. 19.35(1)(am).

WIS. STAT. § 19.36(3).

¶ 7.  Machotka contends that, even though the Village doesn't have the requested information in its possession, the "contractors' records" exception applies because Baird was the Village's "contractor" within the meaning of WIS. STAT. § 19.36(3). He says that because "Baird w[as] not acting in a voluntary capacity without compensation," it must have been acting as the Village's agent "pursuant to the directions of the Village, all in exchange for consideration paid." He claims this contractual relationship continued after its purchase of the issue through the ultimate sale of the bonds to eventual purchasers. As a result, Machotka says, the Village is required by law to obtain that information and provide it to him.

¶ 8.  Machotka correctly points out that, under the cases, a governmental entity cannot evade its responsibilities under the open records law by "shifting" a record's creation or custody to an agent. *Journal/Sentinel, Inc. v. Shorewood Sch. Bd.*, 186 Wis. 2d 443, 453, 521 N.W.2d 165 (Ct. App. 1994). Indeed, that is the type of evil the contractors' records exception is designed to overcome. We disagree with Machotka, however, that *Journal/Sentinel* compels reversal of the circuit court's order in this case. The issue in *Journal/Sentinel* was whether a "memorandum of understanding" prepared by the board's attorneys reciting the settlement terms of a lawsuit between the school board and a former school superintendent was a public record of the board and thus subject to inspection by the newspaper. The board claimed that the memorandum had been drafted by, and was in the custody of, its attorneys. As a result, said the board, it was not a record it had created or was keeping, and thus was not subject to inspection or release under the law. We held that the contractors'

records exception applied. The board had claimed that, while the law firm had contracted with the board to provide it with legal services, it had not specifically contracted to produce the particular memorandum in question and, as a result, the exception didn't apply. We had little difficulty dismissing the argument on the obvious grounds that the memorandum was a document "produced during the course of [the firm]'s representation of the district, and was, in effect, the culmination of that representation." *Id.* at 453. So, in *Journal/Sentinel*, the law firm was indeed the district's agent for the purpose of providing legal services—including preparation of the memorandum—and the memorandum was quite properly considered a district record under the contractors' records provisions of the law.

¶ 9.   Here, however, Baird did not contract to perform any duty for the Village other than to underwrite the bond issue. And its only obligation under that agreement was to purchase the bonds. Anything beyond that—such as Baird's eventual sale of the bonds to others—was undertaken for Baird's own purposes and its own benefit, not the Village's. As the trial court stated: "The municipality can expect nothing more unless it specifically requires, as a sale condition, information to be provided if the bonds are resold." The situation is readily distinguishable from that in the *Journal/Sentinel* case.

¶ 10.   Nor is there any evidence that the Village failed to comply with its record-keeping duties under the open records law. In the 1993 bonding resolution, the Village designated the Union State Bank of West Salem as its fiscal agent and, as required by WIS. STAT. §§ 67.09(1) and 67.10(2), maintained bond registry

records and related information—all of which was provided to Machotka (including the name of the registered owner of the bonds). The Village informed Machotka that the bonds had been sold to Baird and then distributed to the Depository Trust Company whose nominee, Cede & Company, was the initial registered owner. And Machotka has not shown us how the public records law requires anything more of the Village.

*By the Court.*—Judgment affirmed.