WIREDATA, INC., Plaintiff-Respondent,

v.

VILLAGE OF SUSSEX and Village of Sussex
Custodian, Defendants-Co-Appellants,†

GROTA APPRAISALS, LLC, Michael L. Grota
and Assessment Technologies of WI, LLC,
Defendants-Appellants.†
[Case No. 2005AP1473]

WIREDATA, INC., Plaintiff-Appellant,

v.

VILLAGE OF THIENSVILLE, Grota Appraisals, LLC,
Michael L. Grota, and
Assessment Technologies of WI, LLC,
Defendants-Respondents.†
[Case No. 2006AP174]

WIREDATA, INC., Plaintiff-Appellant,

v.

CITY OF PORT WASHINGTON and Matthies Assess-
ments, Inc., Defendants-Respondents,

AMERICAN FAMILY INSURANCE COMPANY, Intervenor.
[Case No. 2006AP175]

Court of Appeals

† Petitions to review filed.

*Nos. 2005AP1473, 2006AP174, 2006AP175. Oral argument November 14, 2006.—Decided January 3, 2007.*

## 2007 WI App 22

(Also reported in 729 N.W.2d 757.)

On behalf of the defendants-appellants and defendants-respondents Grota Appraisals, Michael Grota and Assessment Technologies of WI, LLC, the cause was submitted on the briefs of and oral argument by *Daniel R. Johnson* of *Ryan Kromholz & Manion, S.C.*, Milwaukee.

On behalf of the defendants-co-appellants and defendants-respondents Village of Sussex and Village of Sussex Custodian and City of Port Washington, the cause was submitted on the briefs of *Raymond J. Pollen* and *Erin Fay* of *Crivello, Carlson & Mentkowski, S.C.*, Milwaukee. There was oral argument by *Erin Fay*.

On behalf of the plaintiff-appellant and plaintiff-respondent WIREdata, Inc., the cause was submitted on the briefs of *Alan H. Deutch* and *Emily Canedo* of *Deutch Law Offices, SC*, Fox Point. There was oral argument by *Alan Deutch*.

On behalf of the defendants-respondents Village of Thiensville, the cause was submitted on the brief of *Steven M. Cain* and *Deborah S.R. Hoffmann* of *Housemann & Feind, LLP*, Grafton. There was oral argument by *Steven M. Cain*.

On behalf of the defendants-respondents Matthies Assessments, Inc., the cause was submitted on the brief of and oral argument by *Maile E. Beres* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee.

Nonparty briefs were filed by *Jennifer L. Peterson* of *LaFollette Godfrey & Kahn*, Madison, for Attorneys for the Wisconsin Newspaper Association and the Wisconsin Freedom of Information Council; *Daniel M. Olson* of *League of Wisconsin Municipalities*, Madison; and *Andrew T. Phillips* of *Stadler, Centofanti & Phillips, S.C.*, Mequon, for Attorneys for Wisconsin Counties Association.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J. Nearly six years ago, WIRE-data, Inc. filed open records requests with the three municipalities before us in this appeal. WIREdata sought the property assessment records in the format created and maintained by the municipalities' independent contractor assessors in a computer database. We hold that the open records law allows WIREdata the opportunity to access that database in order to examine and copy the property assessment records. Therefore, the municipalities committed open records law violations when they denied WIREdata such access and instead provided it with a "PDF," or portable document file.

¶ 2. WIREdata urges this court to hold both the municipalities and their independent contractor assessors responsible for failing to properly respond to its open records request. We hold that the open records law contemplates holding the municipalities, but not their independent contractors, responsible for the open records law violations. The municipalities are the statutory authorities obligated to uphold the letter and spirit of the open records law and they cannot evade their duties by shifting the creation and maintenance of their assessment records to their independent contractors. We also reject all challenges to the sufficiency of the open records requests and the existence of the denials of those requests.

¶ 3. Accordingly, in the Village of Sussex case, we affirm the circuit court's order to the extent that it holds that (1) Sussex is an authority and must be held responsible for the open records law violations; (2) WIREdata submitted a valid open records request, which Sussex improperly denied; (3) the PDF failed to

comply with the open records law; (4) the open records law demands access to the computer database; and (5) WIREdata is entitled to actual, reasonable and customary fees and costs. We reverse that order to the extent it holds the Sussex independent contractor assessor responsible for WIREdata's reasonable costs and attorney fees and remand for proceedings to determine the appropriate costs and fees. In the Village of Thiensville and City of Port Washington cases, we affirm the court's order to the extent that it holds that Thiensville and Port Washington are authorities under the open records law. We reverse the court's order to the extent that it holds WIREdata's open records requests were insufficient and that the PDF satisfied its requests in any event. We remand for the court to determine appropriate costs and fees for Thiensville's and Port Washington's open records violations.

## BACKGROUND

¶ 4. We begin with a recitation of the facts surrounding the open records requests and subsequent litigation involving each municipality. For the sake of clarity, we will set forth such facts for each municipality separately, but we will refer back to our discussions of the other cases where appropriate.

### *Village of Sussex*

¶ 5. Sussex contracted with Grota Appraisals, LLC, which is owned by Michael L. Grota, to conduct its property assessments from January 1, 2000, to December 31, 2004. Typically, prior to the advent of computers, assessors would visit the properties and make handwritten notations about the properties on paper cards called "property record cards." Technological ad-

vancements now allow Grota Appraisals appraisers to input the raw property appraisal data from the property record cards into a computer program called Market Drive.

¶ 6. Assessment Technologies of WI, LLC, which is also owned by Michael Grota, developed and copyrighted Market Drive and licenses the software to property appraisers such as Grota Appraisals. The software program, in conjunction with a Microsoft database program (Microsoft Access), collates and arranges the collected information in a multitude of tables and reports for various categories of properties. Grota Appraisals has sublicensed to Sussex certain read-only capabilities of Market Drive software. As a result, Sussex has the ability to print whatever tables and reports that the Market Drive software is configured to assemble.

¶ 7. On April 20, 2001, WIREdata sent registered letters to the Sussex village assessor and village clerk, custodian of records, which stated:

> This is to formally request an electronic/digital copy of the detailed real estate property records (showing the specific characteristics of each parcel and the improvements thereupon) used and/or maintained by the Assessor in determining the proper assessments for each parcel within the Village of Sussex.

WIREdata, a wholly owned subsidiary of Multiple Listing Service, Inc., sought to obtain data regarding specific properties in Sussex, and the other municipalities, for purposes of making the information available to real estate brokers. Sussex directed WIREdata to Grota Appraisals. Grota Appraisals in turn forwarded the matter to Andrew Pelkey. Pelkey owns Impact Consult-

752

ants, Inc., the private computer programming firm that Assessment Technologies contracted with to program the Market Drive software.

¶ 8. On April 24, 2001, WIREdata sent a letter to Sussex's counsel in which it offered Wisconsin's open records law as the legal basis for the request and for the potential mandamus action should Sussex deny its request. On or around May 4, Pelkey contacted WIREdata to arrange the transfer of the requested information. WIREdata's vice president, Thomas Curtis, averred that at the time it was his understanding that Pelkey "was going to help [WIREdata] get the data."

¶ 9. In a letter dated May 4, Pelkey informed Sussex's counsel that he believed it would be very difficult to export data from the Market Drive software to a usable Microsoft Word format. Pelkey stated that providing the information in any format would be very time consuming. Pelkey also wrote that the raw data used by Market Drive cannot be copied because of the copyright.

¶ 10. Curtis sent Pelkey an email in which he wrote, "Selected fields requested from Market Drive software. Any type of electronic output and media is acceptable (i.e., fixed length, comma-quote, pipe delimited). We would need a data layout, if the fields are not in the order below." A data layout specifies the order of the categories of information.

¶ 11. Pelkey sent an email to Curtis outlining the cost and terms of producing the records of the municipalities using the Market Drive software. According to Pelkey, WIREdata would need to pay a $6600 one-time fee to program, test and export the data; a $.50 per parcel charge over and above the $6600 programming fee; and a $.15 per parcel annual update fee. Pelkey concluded his email with the following:

[T]he costs quoted here assume that you are not reselling the data in mass to another source. This data is meant for you and your subscribers to view. If you want to "add value" to any part of this data and distribute it in mass to another company, you will need to charge your customer for our fee in addition to your fees for your added value.

¶ 12. On May 21, WIREdata's counsel wrote a letter to Sussex's counsel in which he declared Pelkey's response "unacceptable." He claimed that the assessor was asking for far more than the actual and necessary costs for copying the data. In support, he cited "the attempt to restrict my client's use of the data once it is transferred."

¶ 13. On May 22, Sussex's counsel sent a letter to Michael Grota asking him to explain how the costs and fees set forth in Pelkey's email could be "justified as the 'actual, necessary and direct costs' of producing these public records." Sussex's counsel cautioned Grota that WIREdata was prepared to file a mandamus action and that if Grota could not justify the costs under the open records law, he may make recommendations to Sussex that differed from the position taken in Pelkey's letter.

¶ 14. Pelkey responded in a May 25 letter. Pelkey explained that while the Market Drive software used by Grota Appraisals does have the ability to export a property record card to a text file, each property would have to be exported one at a time. As a result, exporting all the properties "would be very labor intensive and would be done on a time and material basis." Pelkey informed Sussex's counsel that Assessment Technologies granted Grota Appraisals the authority to give Sussex a copy of the Market Drive database for internal use only. Sussex did not have the authority to distribute the database. Pelkey told Sussex's counsel that

WIREdata's request was not an "open records request since Assessment Technologies is [a] private company, not a municipal government. As such, this request has nothing to do with [Sussex]."

¶ 15. On May 29, Sussex's counsel wrote WIREdata's counsel to advise him "of the status of this matter, and to assure [him] that every effort [was] being made to promptly respond to [WIREdata's] request." He emphasized, however, that "Sussex is not involved and will not become involved in any aspect of this issue that might involve a business transaction or private interests of the parties, as [Sussex's] interest is only in ensuring that the public records laws are followed with regard to the public records request." Counsel stated his belief that the programming that could be done to allow the data to be organized in a comprehensible format was outside the scope of the open records law. He concluded his letter by stating:

> Again, I expect that we will be providing you with the final response to your request in the very near future. Regrettably, this issue arises right during Board of Review procedures which necessarily [require] a significant amount of the Assessor's time. Nevertheless, we will continue to treat this matter with the highest priority.

¶ 16. On June 8, WIREdata filed a mandamus action against Sussex, Grota Appraisals and Michael Grota. WIREdata later amended its complaint, adding Assessment Technologies. In August, Assessment Technologies filed suit in federal court seeking an injunction prohibiting WIREdata from infringing upon its copyrights in the Market Drive software and the resulting digital database compilations.

¶ 17. In December 2002, the United States District Court for the Eastern District of Wisconsin deter-

mined that Assessment Technologies owned the copyright and was protected as to "Market Drive and its derivative works." Thus, the court reasoned, Assessment Technologies "gets to decide whether or not a derivative work, such as requested by [WIREdata], will be produced." The Seventh Circuit reversed. *See Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 648 (7th Cir. 2003).

¶ 18. The Seventh Circuit held that the process of extracting the raw data WIREdata sought from the Market Drive database did not violate copyright law. *Id.* at 644. According to the court, Assessment Technologies did not create the database it was seeking to sequester from WIREdata. *Id.* at 646. It created only an empty database, a bin that the tax assessors hired by the municipalities filled with the data. *Id.* It created the compartments in the bin and the instructions for sorting the data to those compartments, but those were its only innovations and they were protected by copyright law. *Id.* The court explained that Assessment Technologies had no ownership or other legal interest in the data the tax assessors collected, which the court emphasized were in the public domain, and therefore no legal ground for making the acquisition of that data more costly for WIREdata. *Id.* at 645. The court wrote that Assessment Technologies "is trying to use its copyright to sequester uncopyrightable data, presumably in the hope of extracting a license fee from WIREdata." *Id.*

¶ 19. The court stated that WIREdata did not want the data compilation as structured by Market Drive, which was intended for tax assessments. *Id.* at 643. Rather, the court taught, WIREdata wanted the raw data, data created not by Assessment Technologies but by tax assessors, data that are in the public domain. *Id.* at 644. Once WIREdata extracted the data, it would

sort them in accordance with its own needs, which have to do with providing the information about properties that is useful to real estate brokers as opposed to taxing authorities. *Id.* at 643.

¶ 20. In summarizing its holding, the court offered four methods by which WIREdata could extract the data: (1) the municipalities use Market Drive to extract the data and place it in an electronic file, (2) the municipalities use Microsoft Access to create an electronic file, (3) the municipalities allow programmers furnished by WIREdata to use their computers to extract the data from their database, and (4) the municipalities copy the database file and give it to WIREdata to extract the data from. *Id.* at 647–48. At some point after the release of the decision, Michael Grota sent WIREdata Sussex's property record information in an electronic and digital form, a PDF.

¶ 21. Following the decision, all of the parties filed motions for summary judgment. The trial court granted WIREdata's motion for summary judgment, with the exception of a request for punitive damages. The court determined that there could be multiple authorities under open records law and Sussex, Grota Appraisals, Assessment Technologies and Michael Grota were authorities. The court held that WIREdata's request was in the form the open records law required and did not require the creation of a new record. The court found that the defendants did not provide a proper response to the valid open records request. The court concluded that the PDF was not in compliance with either the open records law or the Seventh Circuit decision.

### *Village of Thiensville*

¶ 22. In October 1999, Thiensville entered into a "Contract for Maintenance of Assessment Records" with

757

Grota Appraisals. The contract commenced on January 1, 2000, and terminated on December 31, 2001. A computer loaded with the Market Drive software is stored at the Thiensville Village Hall. The computer is limited in its capabilities, as it is a "read only" terminal and only allows for the printing of hard copy assessment reports.

¶ 23. On April 20, 2001, WIREdata sent Thiensville a formal written open records request for:

> [A]n electronic/digital copy of the detailed real estate property records (showing the specific characteristics of each parcel and the improvements thereupon) used by the Assessor for your municipality in determining the proper assessments for each parcel within the Village of Thiensville.

On April 24, WIREdata's counsel sent a letter to Thiensville's counsel in which it offered Wisconsin's open records law as the legal basis for the request and for the potential mandamus action should Thiensville deny its request. Thiensville forwarded the matter to Grota Appraisals and informed WIREdata it had done so.

¶ 24. On May 30, following the communications between WIREdata and Pelkey referenced in our recitation of the facts of the Sussex case, WIREdata filed an open records action against Thiensville, Grota Appraisals and Michael Grota. WIREdata later filed an amended complaint in which it named Assessment Technologies as well.

¶ 25. In 2004, following the Seventh Circuit's decision, Pelkey also sent WIREdata a PDF version of Thiensville's property records. Thiensville, WIREdata and Grota Appraisals, Assessment Technologies and Michael Grota filed motions for summary judgment

that were substantially similar to those filed in the Sussex case. The court granted summary judgment in favor of Thiensville and Grota Appraisals, Assessment Technologies and Michael Grota and imposed costs on WIREdata. In its oral ruling, the court first rejected the notion that the Sussex court's decision had any preclusive effect on the cases before it. The court next determined that Thiensville was an authority; it had simply delegated the responsibility for maintaining the records to a different custodian. However, the court then found that WIREdata's initial request failed to satisfy the open records law requirement that it be reasonable in its scope and that the subsequent enhanced request from WIREdata was improperly directed to Pelkey. The court further determined that the PDF was in "electronic digital format," which was what WIREdata had requested.

### *City of Port Washington*

¶ 26. In November 2000, Port Washington contracted with Matthies Assessments to conduct the official assessments on its behalf for 2001. Prior to the contract, Matthies Assessments had entered into a license and purchase agreement with Assessment Technologies for the use of the Market Drive software.

¶ 27. On April 25, 2001, WIREdata sent a letter to Port Washington's treasurer regarding a recent conversation about Port Washington's property information. WIREdata indicated that it would be sending a request letter to Port Washington's assessor, Matthies Assessments. WIREdata specified that it was interested in acquiring the detailed property information such as square footage, age, number of bedrooms, number of baths, and property class and the sales data such as the sale date, sale price, transfer fee and type of transfer.

WIREdata asked Port Washington to include the number of parcels, a current record layout, a copy of the property record card it was currently using and ten data sheets, selected at random. WIREdata concluded the letter by asking the treasurer to contact it to discuss the estimated cost to reproduce the data and the type of media the data would come in.

¶ 28. On May 4, the treasurer sent WIREdata a letter stating, "You certainly may obtain information from Matthies Assessments. Please direct your request directly to Matthies; please also direct your questions regarding their charges for these services directly to them." The treasurer also signed a release approving Matthies Assessments' release to WIREdata of its detailed property information. On May 9, WIREdata sent a letter to Ernest Matthies of Matthies Assessments. WIREdata wrote:

> WIREdata Corporation is requesting the detailed property information or assessor information such as square footage, age, number of bedrooms, number of baths, property class, etc. Please include the number of parcels, a current record layout, 10 printed data sheets, selected at random, code list for each field, and a copy of the property record card you are currently using.

¶ 29. On May 22, 2001, Ernest Matthies responded to the May 9 letter. He wrote that he assumed WIREdata was "requesting a copy of the assessment data base used to store assessment data for the City of Port Washington." He informed WIREdata that he had just completed the process of placing Port Washington on Market Drive. Matthies indicated that he had spoken with Robert Grota, a principal at Assessment Technologies, who informed him that Matthies Assessments' license and purchase agreement with Assessment Technologies precluded it from complying with

WIREdata's request. "This contract specifies that the use of Market Drive is for the use of the licensee only and does not allow our firm to 'distribute copies of this program or its documentation to others.' According to Mr. Grota, this means that I do not have the right to provide your firm with a copy of the Port Washington database." He then directed WIREdata to Robert Grota for an explanation of the licensing agreements.

¶ 30. On June 12, 2001, WIREdata filed an open records action against Port Washington and Matthies Assessments. WIREdata later filed an amended complaint, naming Assessment Technologies as a party. Following the federal district court decision in the copyright case, the circuit court began addressing the Port Washington and Thiensville cases together. In response to the Seventh Circuit's decision, Pelkey sent WIREdata a PDF version of Port Washington's property records. The parties then each filed motions for summary judgment. As in the Thiensville case, the court granted Matthies Assessments' and Port Washington's motions for summary judgments, denied WIREdata's motion and imposed costs against WIREdata.

## STANDARD OF REVIEW

¶ 31. We review a summary judgment de novo, employing the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). It is a well-known methodology which need not be repeated here. *See State Bank of La Crosse v. Elsen*, 128 Wis. 2d 508, 511–12, 383 N.W.2d 916 (Ct. App. 1986). Generally, we will affirm the circuit court's decision granting summary judgment if the record demonstrates that there is no genuine issue as to

any material fact and the moving party is entitled to judgment as a matter of law. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733 (Ct. App. 1984). Additionally, the interpretation of a statute and its application to undisputed facts are questions of law that we review independently. *Garcia v. Mazda Motor of Am., Inc.*, 2004 WI 93, ¶ 7, 273 Wis. 2d 612, 682 N.W.2d 365.

## DISCUSSION

¶ 32. The parties each raise several issues for our review: (1) whether both the municipalities and their independent contractor assessors are the responsible statutory authorities under the open records law; (2) whether WIREdata's requests contained reasonable limitations as to the subject matter and length of time of the sought-after records; (3) whether the municipalities denied WIREdata's open records requests; (4) whether the municipalities complied with the open records law by providing the PDF to WIREdata; and (5) whether the imposition of costs and attorney's fees on Michael Grota, Grota Appraisals and Assessment Technologies was appropriate.

¶ 33. We will first set forth the black letter Wisconsin open records law. We will then address each of the above arguments, discussing each municipality individually where necessary.

### *Open Records Law*

¶ 34. The underlying purpose of Wisconsin's open records law is declared in Wis. Stat. § 19.31 (2003–04):[1]

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

¶ 35. In furtherance of that policy, Wis. Stat. § 19.35 provides a requester with the procedure to exercise the right to inspect a public record and/or to make or receive a copy of a public record maintained by an authority. " 'Authority' means any of the following having custody of a record: a state or local office, elected official, agency, board, commission, committee, council, department or public body corporate and politic created by constitution, law, ordinance, rule or order . . . ." Wis. Stat. § 19.32(1). An elected official is the legal custodian of his or her records and the records of his or her office. Wis. Stat. § 19.33(1).

"Record" means any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless of physical form or characteristics, which has been created or is being kept by an authority. "Record" includes, but is not limited to, handwritten, typed or printed pages, maps, charts, photographs, films, recordings, tapes (including computer tapes), computer printouts and optical disks.

"Record" does not include . . . materials to which access is limited by copyright [or] patent.

Sec. 19.32(2). A computer program is not subject to examination or copying, but the material used as input for a computer program or the material produced as a product of the computer program is subject to the right of examination and copying. WIS. STAT. § 19.36(4).

██

¶ 36. Pursuant to the open records law, a request directed at an authority is sufficient if it reasonably describes the requested record or the information requested. WIS. STAT. § 19.35(1)(h). The law does not require a request to contain any "magic words" nor does it prohibit the use of any words. *ECO, Inc. v. City of Elkhorn*, 2002 WI App 302, ¶ 23, 259 Wis. 2d 276, 655 N.W.2d 510. However, "a request for a record without a reasonable limitation as to subject matter or length of time represented by the record does not constitute a sufficient request." Sec. 19.35(1)(h). In addition, § 19.35(1)(L) relieves authorities of the responsibility of "creat[ing] a new record by extracting information from existing records and compiling the information in a new format."

██

¶ 37. Each authority, upon request for any record, must "as soon as practicable and without delay, either fill the request or notify the requester of the authority's determination to deny the request in whole or in part and the reasons therefor." WIS. STAT. § 19.35(4)(a). When an authority denies a written request, it shall provide the requester with a written statement of the reasons for denying the written request. Sec. 19.35(4)(b). Thus, the authority's statutory choices are two: comply or deny. *WTMJ, Inc. v. Sullivan*, 204

Wis. 2d 452, 457, 555 N.W.2d 140 (Ct. App. 1996). "[C]ompliance at some unidentified time in the future is not authorized by the open records law." *Id.* at 458.

¶ 38. Further, under WIS. STAT. § 19.35, once a custodian decides to withhold a document, the custodian must state specific reasons for the refusal to disclose the document. *Osborn v. Board of Regents of Univ. of Wis. Sys.*, 2002 WI 83, ¶ 16, 254 Wis. 2d 266, 647 N.W.2d 158; *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979). Thereafter, a court will not consider reasons for withholding the document that were not asserted by the custodian. *Newspapers*, 89 Wis. 2d at 427. *See also Oshkosh Nw. Co. v. Oshkosh Library Bd.*, 125 Wis. 2d 480, 484, 373 N.W.2d 459 (Ct. App. 1985) ("Where inspection is denied, it is the custodian, not the attorney representing the governmental body after a mandamus action is commenced, who must give specific and sufficient reasons for denying inspection.").

¶ 39. If an authority withholds a record or delays granting access to a record after a written request is made, a requester may immediately bring a mandamus action asking a court to order release of the record. WIS. STAT. § 19.37(1); *WTMJ*, 204 Wis. 2d at 461. If the requester prevails or substantially prevails in the action, the court shall award reasonable attorney fees, damages of not less than $100, and other actual costs to the requester. Sec. 19.37(2).

### Statutory Authorities

### Municipalities

¶ 40. The municipalities claim that they are not the responsible authorities under the open records law

and therefore they are not the proper subjects of the mandamus actions. The statutory definition of "authority" includes public bodies corporate and politic. *See* WIS. STAT. § 19.32(1). Sussex, Thiensville and Port Washington each qualify as a public body corporate and politic. They contend, however, that they are exempted from the statutory definition of "authority" because their contract assessors create and have custody of the sought-after records. *See* § 19.32(1) (" 'Authority' means any of the following having *custody* of a record . . . ." (Emphasis added.)).

¶ 41. In *Journal/Sentinel, Inc. v. School Bd. of the Sch. Dist. of Shorewood*, 186 Wis. 2d 443, 521 N.W.2d 165 (Ct. App. 1994), the issue was whether a "memorandum of understanding" prepared by a school board's attorneys reciting the settlement terms of a lawsuit between the school board and a former school superintendent was a public record of the board and thus subject to inspection by a newspaper. *Id.* at 445, 452. Despite the fact that the memorandum had been drafted by and was in the custody of a private law firm, we held that the school board *was* an authority under the statute, but that the private law firm *was not* an authority. *Id.* at 452.

¶ 42. We explained that the question really resolved to whether a public body could avoid the public access demanded by the open records law by delegating both the record's creation and custody to a contractor. *Id.* at 452–53. We stated, "Posing this question provides its answer: it may not." *Id.* at 453. We reasoned that the contractors' records provisions of the open records law establish an exception to the general rule that a public body need only provide information which it has either created and/or has in its custody. *Id.* "[E]ach authority shall make available for inspection and copy-

ing under s. 19.35(1) any record produced or collected under a contract entered into by the authority with a person other than an authority *to the same extent as if the record were maintained by the authority.*" WIS. STAT. § 19.36(3) (emphasis added).

¶ 43. *Journal/Sentinel* teaches that pursuant to WIS. STAT. § 19.36, public bodies cannot evade their responsibilities under the open records law by shifting a record's creation or custody to an independent contractor. Indeed, as the open records case law suggests, that is the precise type of evil the contractors' records exception is designed to overcome. *Machotka v. Village of West Salem*, 2000 WI App 43, ¶ 8, 233 Wis. 2d 106, 607 N.W.2d 319. Accordingly, simply because Sussex, Thiensville and Port Washington have contracted out the collection and maintenance of the assessment information does not mean that they have relieved themselves of their responsibilities under the open records laws. The municipalities are the responsible authorities under the open records laws.

¶ 44. The municipalities contend that *Machotka* and *Building and Construction Trades Council of South Central Wisconsin v. Waunakee Community School District*, 221 Wis. 2d 575, 585 N.W.2d 726 (Ct. App. 1998), control and absolve them of responsibility for any open records law violations. We disagree. In those two cases, the requesters sought records that fell outside of the contractual obligations between the authorities and their contractors. *See Building & Constr. Trades Council*, 221 Wis. 2d at 580–81 (contractors' records exception did not apply to payroll records of subcontractors that did not themselves have a contract with an authority); *Machotka*, 233 Wis. 2d 106, ¶ 9 (contractors' records exception did not apply where the

sought-after records were not part of the contractual relationship between the authority and the independent contractor, but rather were part of separate and private undertakings of the independent contractor). Here, however, the municipalities contracted with the independent contractor assessors for the collection and maintenance of the property records WIREdata seeks.

*Independent Contractor Assessors*

¶ 45. Having determined that the municipalities are authorities, we turn to the status of the independent contractor assessors. The amicus briefs submitted in this case consider whether a single record can have multiple authorities or, more specifically, whether the municipalities and their independent contractor assessors can be held jointly responsible as authorities for the violations in this case. WIREdata and the municipalities contend that the independent contractor assessors, as local public officials and as custodians of the assessment records, are also authorities. Even assuming the statute allows for multiple authorities and the assessors are the custodians of the records, we cannot find any support either in case law or the statute for the position that the assessors bear responsibility for open records obligations.[2]

---

[2] The municipalities and WIREdata point out that both independent contractor assessors confessed to being "authorities" under the statute in their answers to WIREdata's complaints and that Michael Grota conceded that he believes he is an authority. The municipalities and WIREdata assert that we must hold the assessors to their admissions. The municipalities and WIREdata read too much into the admissions. The assessors may have accepted the label "authority" to describe their

¶ 46. First, we are not aware of any case in which an individual, whether a public official or private citizen, or a private corporation has been held responsible for an open records violation. Simply put, the responsibility for upholding the letter and spirit of the open records law travels to the governmental or quasi-governmental entity enumerated in WIS. STAT. § 19.32(1).

¶ 47. The municipalities direct our attention to cases where they claim that an entity, other than the governmental body, was held responsible under the public records law because it was a custodian of the sought-after records. However, *Journal/Sentinel* informs us that simply because a private contractor maintains and has custody of the sought-after records does not mean that it is an authority under the statute. *See Journal/Sentinel*, 186 Wis. 2d at 452. Further, in each of the cases the municipalities cite, the custodian was a subset of a governmental entity, or was itself a type of organization, that fell within a category listed in WIS. STAT. § 19.32(1). *See Woznicki v. Erickson*, 202 Wis. 2d 178, 184, 549 N.W.2d 699 (1996) (holding that the district attorney, a "state or local office" with custody of teacher's personnel file, was an authority under § 19.32(1)); *Grebner v. Schiebel*, 2001 WI App 17, ¶¶ 1–3, 240 Wis. 2d 551, 624 N.W.2d 892 (concluding that the Polk county clerk with custody of voting records could determine how to satisfy an open records request); *Osborn*, 254 Wis. 2d at 271 (assuming that the Board of Regents of the University of Wisconsin System, which had custody of the records of its applicants, bore open records law responsibility); *Cavey v. Walrath*,

official capacity as contract assessors for the municipalities, but they have steadfastly denied having any responsibility under the open records law.

229 Wis. 2d 105, 116, 598 N.W.2d 240 (Ct. App. 1999) (holding that the Legal Aid Society, which received more than fifty percent of its funds from Milwaukee county and provided health and safety services to the county, was an authority because it satisfied the criteria in § 19.32(1) for nonprofit organizations).

¶ 48. Here, even assuming that the independent contractors do have custody of the records, they do not fit within any of the categories of entities listed in the definition of authority. Contrary to WIREdata's and the municipalities' assertions, the independent contract assessors are not "local public officials" who qualify as authorities under WIS. STAT. § 19.32(1). The definition of authority includes "a state or local office" having custody of a record. Sec. 19.32(1). WISCONSIN STAT. § 19.42(7w) defines "local public office" and excludes from that definition any position filled by an independent contractor. The contracts between the municipalities and their respective assessors each show that the municipalities designated the assessors as independent contractors hired to fill an appointed statutory position.[3] The independent contractor assessors cannot be

---

[3] The contract between Matthies Assessments and Port Washington states, "The Assessor shall be an independent contractor pursuant to [WIS. STAT.] Sec. 60.307(4)." The contracts between Grota Appraisals and Thiensville and Grota Appraisals and Sussex each state, "The Assessor is to be considered an Independent Contractor hired to fill an Appointed Statutory Position, and is not subject to withholding tax, insurance programs or benefits." At oral argument, the parties debated whether it was WIS. STAT. § 70.055 which authorizes governing bodies to hire "expert help" to aid in making assessments or WIS. STAT. § 60.307(4) which grants towns the right to hire independent contractor assessors that provided the municipalities with the authority to hire Matthies Assessments and Grota Appraisals. Clarification of the specific

held responsible as authorities under the open records law for the violations in these cases.

¶ 49. The statute's penalty provision further supports our construction of the open records law. WISCONSIN STAT. § 19.37(2) provides that

> the court shall award reasonable attorney fees, damages of not less than $100, and other actual costs to the requester if the requester prevails . . . . Costs and fees shall be paid by the authority affected or the unit of government of which it is a part, or by the unit of government by which the legal custodian under s. 19.33 is employed and may not become a personal liability of any public official.

The statute speaks in terms of the governmental entity, not a private citizen or corporation or even an individual public official, shouldering the responsibility of paying the actual costs and damages and attorney fees of the prevailing requester. Accordingly, we reverse that portion of the judgment proclaiming Grota Appraisals, Assessment Technologies and Michael Grota as statutory authorities responsible for the open records violations.[4]

---

statutory provision authorizing the hiring of the assessors would not alter our analysis. The fact remains that the contracts explicitly provided that the assessors were to be considered independent contractors.

[4] We recommend that in the future when municipalities outsource government services, such as property assessments, they address open records law compliance in their contracts. The municipalities should consider including indemnification and hold harmless clauses to protect themselves should an open records dispute arise. Indeed, the municipalities in this appeal have taken similar protective measures in their contracts with the assessors. Furthermore, it is possible that contractual provisions prohibiting or otherwise preventing the municipali-

## Sufficiency of WIREdata's Requests

■

¶ 50. The municipalities and their independent contractor assessors maintain that WIREdata's initial written requests failed to contain reasonable limitations as to the subject matter and length of time for the records requested. *See* WIS. STAT. § 19.35(1)(h). We need not consider the cases individually on this point. The municipalities and their assessors did not raise these objections in response to WIREdata's requests; instead, the parties first challenged the sufficiency of the requests far into the litigation. We will not consider these after-the-fact reasons for nondisclosure offered not by the custodian and/or authority of the sought after records, but by an attorney during litigation. *See Newspapers*, 89 Wis. 2d at 427; *Oshkosh*, 125 Wis. 2d at 484.

■

¶ 51. Furthermore, on the merits, the public policy underpinning the time and subject matter limitations does not apply. The purpose of the limitations is to prevent a situation where a request unreasonably burdens a records custodian, requiring the custodian to spend excessive amounts of time and resources deciphering and responding to a request. *See Schopper v. Gehring*, 210 Wis. 2d 208, 213, 565 N.W.2d 187 (Ct. App. 1997) ("While this state favors the opening of public records to public scrutiny, we may not in furtherance of this policy create a system that would so burden the

ties from providing access to records subject to the open records law may violate public policy and therefore may be open to judicial scrutiny. *See State ex rel. Journal/Sentinel, Inc. v. Pleva*, 155 Wis. 2d 704, 711, 456 N.W.2d 359 (1990) (courts will protect parties' freedom of contract as long as the terms of the contract are not contrary to public policy).

records custodian that the normal functioning of the office would be severely impaired."). Here, the information contained in the computer database clearly defines the reach of WIREdata's requests and Pelkey testified at his deposition that the information could be exported fairly easily within a short amount of time. Furthermore, we note that the requests were specific enough as to time and subject matter that Pelkey was able to offer WIREdata a quote on the costs of responding to the requests. We reject the challenges to the sufficiency of WIREdata's requests.

### *Denials of WIREdata's Requests*

¶ 52. The municipalities and their independent contractor assessors argue that they did not deny WIREdata's records requests prior to the filing of the mandamus actions and therefore WIREdata's mandamus actions were premature. *See* Wis. Stat. § 19.37(1) ("If an authority withholds a record . . . or delays granting access to a record . . . the requester may pursue . . . an action for mandamus . . . ."). We disagree.

¶ 53. The municipalities, as the responsible statutory authorities, had the obligation to ensure *timely* access to the affairs of government, *see WTMJ*, 204 Wis. 2d at 457–58, and each of the municipalities failed to sustain this obligation. Wisconsin Stat. § 19.35(4) requires an authority to fill any request for records or notify the requester of the reasons for denial "as soon as practicable and without delay." Compliance at some unidentified time in the future is not authorized by the open records law. *WTMJ*, 204 Wis. 2d at 458. The open records law admits of only two choices for the authority:

comply or deny. *Id.* at 457; § 19.35(4). If an authority withholds a record or delays granting access, the requester may *immediately* bring an action for mandamus seeking release of the record. Wis. Stat. § 19.37(1); *WTMJ*, 204 Wis. 2d at 461. Thus, a failure of an authority to promptly respond to a request constitutes a denial, authorizing the requester to pursue a mandamus action in order to compel an appropriate response.

¶ 54. In each case, several weeks passed between when WIREdata submitted its open records request and when it filed the mandamus action. Rather than wait for an undetermined amount of time for an appropriate municipal response, WIREdata chose to bring the mandamus action to compel that response. It was well within its rights to do so. *See* Wis. Stat. § 19.37(1); *WTMJ*, 204 Wis. 2d at 461.

¶ 55. · We also note that WIREdata could have reasonably construed its communications with Pelkey and both of the assessors as denials of its requests. The municipalities decry any responsibility for the effects of these communications. However, for purposes of the open records law, their actions must be attributed to the municipalities. They were all acting at the behest of the respective municipalities. Further, the municipalities' arguments rest on their assumption that either the contract assessors shouldered sole responsibility, or that they shared joint responsibility with their assessors, for the open records law duties. As we have explained, where the open records law is concerned, the buck stops with the municipalities.

¶ 56. Sussex and Thiensville, by virtue of WIREdata's communications with Pelkey, conditioned the release of the requested records on financial terms plainly unauthorized by the open records law. Pelkey

informed WIREdata that in order for it to obtain the records sought, it would have to pay a fee of $6600, a per parcel charge, an annual update fee and copyright license fees. Open records law permits the imposition of a fee upon the requester of a copy that does not exceed the "actual, necessary and direct cost of reproduction and transcription of the record." WIS. STAT. § 19.35(3)(a). Michael Grota conceded that the fees had profit built into them.

¶ 57. For a requester to construe a response as a refusal to comply with the open records laws, it need not contain any magic words such as "deny" or "refuse." An offer of compliance with a request, like the one here, that is conditioned on unauthorized costs and terms constitutes a denial of that request.

¶ 58. Port Washington, through Matthies Assessments, flatly denied WIREdata's request. Port Washington directed WIREdata to Matthies Assessments and signed a release authorizing Matthies Assessments to provide WIREdata with the requested records. Ernest Matthies wrote to WIREdata and informed it that he had spoken with Robert Grota, a principal at Assessment Technologies, who informed him that his license and purchase agreement with Assessment Technologies, which prohibited the distribution of copies of Market Drive and its documentation, "preclude[d]" him from complying with its request. Ernest Matthies then denied WIREdata's request outright, stating, "I do not have the right to provide your firm with a copy of the Port Washington database."

### Format of the Response

¶ 59. The municipalities and their independent contractor assessors argue that the PDF provided to WIREdata satisfied the requirements of WIREdata's open records requests. In support, they quote WIREdata's requests for "an electronic/digital copy" and direct us to WIREdata's admission that the PDF constitutes an electronic file. They read their obligations under the open records law too narrowly.

¶ 60. There is a presumption that the public has the right to inspect public records unless an exception is found. *State ex rel. Milwaukee Police Ass'n v. Jones,* 2000 WI App 146, ¶ 19, 237 Wis. 2d 840, 615 N.W.2d 190. The term "record" is broadly drawn. It includes *"any material* on which . . . electromagnetic information is recorded or preserved, *regardless of physical form or characteristics,* which has been created or is being kept by an authority." Wɪs. Sᴛᴀᴛ. § 19.32(2) (emphases added).

¶ 61. We have already considered the application of our open records law to data in digital form. In *Jones,* 237 Wis. 2d 840, ¶ 1, Milwaukee's police officers' association and its president filed an open records request for a copy of a 911 call. The chief of police responded by providing an analog copy of the original digital audio tape recording. *Id.,* ¶¶ 3, 4. The association subsequently enhanced its request, seeking a digital audio copy of the original digital recording. *Id.,* ¶ 4. The chief of police denied that enhanced request and a mandamus action ensued. *Id.,* ¶¶ 5–7.

¶ 62. The chief of police maintained that Wɪs. Sᴛᴀᴛ. § 19.36(4) establishes that record requesters have

no right to copies of computer programs, but rather only may request the information which is inputted into a computer for processing. *Jones*, 237 Wis. 2d 840, ¶ 16. We rejected this argument, finding it contrary to the remaining language in § 19.36(4), which also permits access to the material produced as a product of the computer program. *Jones*, 237 Wis. 2d 840, ¶ 17. We held that the statute "[c]learly and unambiguously . . . allows for exactly what [the association] has requested —access to the source 'material' and the opportunity for 'examination and copying.' " *Id.* In that case, the "source material" was the digital audio tape itself.

¶ 63. By arguing that the PDF satisfies WIREdata's open records requests, the municipalities are essentially fronting the same argument as the chief of police in *Jones*. They are saying that the PDF, like the analog copy in *Jones*, essentially provides WIREdata with the same information the assessors inputted into the computer program. However, as *Jones* teaches, the language of the law itself and the public policy underpinning the open records law require more. They require access to the source material—the material as it is both inputted and stored in the database, regardless of its physical form or characteristics.

¶ 64. Here, WIREdata seeks the data created and collected not by Assessment Technologies and the Market Drive program, but by the tax assessors on their visits to the properties or from other sources. The assessors inputted this raw data into the computer, and the Market Drive program in conjunction with Microsoft Access automatically allocated the data to hundreds of fields grouped into master categories. *See Assessment Techs.*, 350 F.3d at 642–43. This inputted data, maintained at public expense in the Microsoft Access database, is as much a part of the public record

as if it were written on paper property cards and organized and stored in a file cabinet. As *Jones* tells us, the open records law provides WIREdata with access to this material whatever its physical form or characteristics. WIREdata, or the municipalities themselves, may use tools, in the Market Drive program itself or otherwise, to extract and copy the data WIREdata desires from the Microsoft Access database and place it in a separate electronic file.

¶ 65. The municipalities and their independent contractor assessors comment that the PDF, essentially a photocopy of an electronic document viewed as a picture on a computer screen, is an electronic file that permits WIREdata to cut and paste the assessment information. They miss the point. The municipalities and assessors do not input the data into or maintain the assessment records in a PDF. Indeed, they created the PDF following the Seventh Circuit's decision rejecting Assessment Technologies' copyright defense. Instead, the municipalities and their assessors maintain the assessment data in a Microsoft Access database which runs off of the Market Drive software.[5] *Jones* tells us that WIREdata may request access to this database for purposes of examination and copying of the source data.[6]

---

[5] At the time of the open records requests, the data was kept in a Microsoft Access database. Now, the data is kept in either a Microsoft Access or a Microsoft SQL Server database.

[6] In his discussion of "form-of-production" disputes, Withers writes:

> Most electronic document productions, until recently, mimicked paper document productions. The electronic files were "imaged," that is, converted from their native file format into a static image, usually in Tagged Image File Format ("TIFF") or Portable Document Format ("PDF"). These formats are essentially the same as photocopies of the electronic document as it would appear on a

¶ 66. The organization and compilation of the data into the Microsoft Access database, done at public expense, allows greater ease of public access to the public assessment information. In keeping with the letter and spirit of the open records law, we will not allow the municipalities to deny WIREdata, and others who seek the information, the value-added benefit of this computerization. As we wrote in *Jones*:

> As technology advances and computer systems are refined, it would be sadly ironic if courts could disable Wisconsin's open records law by limiting its reach . . . . A potent open records law must remain open to technological advances so that its statutory terms remain true to the law's intent.

*Jones*, 237 Wis. 2d 840, ¶ 19.

¶ 67. The municipalities and their assessors assert that WIREdata's demand would require the creation of a new record, something outside the scope of

screen or in a paper printout. These images have some of the advantages of portability and cost-savings of other electronic documents, and they also have the advantages of being static artifacts —they can be Bates stamped, categorized and gathered into virtual file folders, and even readily printed out for those who insist on handling paper. But they are also different from the electronic file in its native format, such as a word processing document, database, or spreadsheet. The files in native formats are dynamic, and behave the way they do in the active business environment, which may be significant to understanding their function and content. They also contain non-apparent information, such as metadata (embedded records of the creation and management of the document), editorial comments and changes (which may be kept in the native file format for later revision), and functions (such as the mathematical formulas that determine the relationship of cells in a spreadsheet or records in a database).

Kenneth J. Withers, *Electronically Stored Information: The December 2006 Amendments to the Federal Rules of Civil Procedure,* 4 Nw. J. Tech. & Intell. Prop. 171, 188 (Spring 2006).

the open records law. *See* Wis. Stat. § 19.35(1)(L). The demand does not require the municipalities and their assessors to create a new record.

¶ 68. In *George v. Record Custodian*, 169 Wis. 2d 573, 579, 485 N.W.2d 460 (Ct. App. 1992), we stated that a "nonexistent record cannot be inspected or copied" and therefore the records custodian is not required under the open records law to "collect or compile statistics or create a record for the benefit of the requester." In contrast to *George*, WIREdata's requests do not require the municipalities and their assessors to compile or collect statistics or to explain, interpret or analyze information. As our discussion demonstrates, the municipalities and their contract assessors already have the material available in the format WIREdata seeks.

### Imposition of Costs and Attorney Fees

¶ 69. Our holding that the responsibility for the open records law travels to the Wis. Stat. § 19.32(1) governmental or quasi-governmental entity all but answers the parties' claims regarding the imposition of costs and attorney fees. Pursuant to the plain language of the statute, Sussex, Thiensville and Port Washington as the responsible governmental authorities must pay the costs, fees and damages assessed for the open records violations. *See* Wis. Stat. § 19.37(2). We reverse the circuit courts' orders to the extent that they require otherwise and remand for determinations of the statutory costs and fees.[7]

---

[7] Grota Appraisals, Assessment Technologies and Michael Grota also argue that Wis. Stat. § 814.04 limits available

## CONCLUSION

¶ 70. Sussex, Thiensville and Port Washington are statutory authorities and, as such, are responsible for the open records law violations in this case. These municipalities must provide WIREdata with access to the computer database so that it may examine and copy the property assessment information it seeks. On remand, we direct the trial court to assess against the municipalities the appropriate attorney fees and costs.[8]

*By the Court.*—Orders affirmed in part; reversed in part and causes remanded with directions.

---

attorneys fees to $100. Their argument is without merit. WISCONSIN STAT. § 19.37(2), which deals specifically with open records law violations, does not place a monetary cap on the amount of attorney fees available to the prevailing requester. *See State v. Gillespie*, 2005 WI App 35, ¶ 7, 278 Wis. 2d 630, 693 N.W.2d 320 (where two statutes relate to the same subject matter, the specific statute controls the general statute), *review denied*, 2005 WI 60, 281 Wis. 2d 115, 697 N.W.2d 473.

[8] The Village of Sussex asks us to dismiss "the nominal 'Village of Sussex Custodian of Records.'" We deem this a nonissue as WIREdata essentially does not dispute that this is a fictional entity and we are upholding judgment against the Village of Sussex.