WIREDATA, INC., Plaintiff-Respondent,

v.

VILLAGE OF SUSSEX and Village of Sussex Custodian,
Defendants-Co-Appellants-Cross Petitioners,

GROTA APPRAISALS, LLC, Michael L. Grota
and Assessment Technologies of WI, LLC,
Defendants-Appellants-Petitioners.

WIREDATA, INC., Plaintiff-Appellant,

v.

VILLAGE OF THIENSVILLE, Defendant-Respondent,

GROTA APPRAISALS, LLC and Michael L. Grota,
Assessment Technologies of WI, LLC,
Defendants-Respondents-Petitioners.

WIREDATA, INC., Plaintiff-Appellant,

v.

CITY OF PORT WASHINGTON,
Defendant-Respondent-Cross Petitioner,

MATTHIES ASSESSMENTS, INC.,
Defendant-Respondent,

AMERICAN FAMILY INSURANCE COMPANY,
Intervenor.

Supreme Court

397

Nos. 2005AP1473, 2006AP174, 2006AP175.
Oral argument March 13, 2008.—Decided June 25, 2008.

2008 WI 69

(Also reported in 751 N.W.2d 736.)

For the defendants-co-appellants-cross petitioners and the defendant-respondent-cross-petitioner there were briefs by *Raymond J. Pollen, Remzy D. Bitar,* and *Crivello Carlson & Mentkowski, s.c.,* Milwaukee, and oral argument by *Remzy D. Bitar.*

For the defendants-appellants-petitioners there were briefs by *Joseph A. Kromholz, Daniel R. Johnson,*

and *Ryan Kromholz & Manion, S.C.,* Milwaukee, and oral argument by *Daniel R. Johnson.*

For the defendant-respondent there were briefs by *Maile E. Beres, Barbara O'Brien,* and *Borgelt, Powell, Peterson & Frauen, S.C.,* Milwaukee, and oral argument by *Barbara O'Brien.*

For the respondent there were briefs by *Alan H. Deutch, Deutch Law Offices, SC,* and *A Division of Deutch & Weiss, LLC*, Fox Point, and oral argument by *Alan H. Deutch.*

An amicus curiae brief was filed by *Andrew T. Phillips, Kristen D. DeCato,* and *Stadler, Centofanti & Phillips, S.C.,* Mequon, on behalf of the Wisconsin Counties Association.

An amicus curiae brief was filed by *Daniel M. Olson,* Madison, on behalf of the League of Wisconsin Municipalities.

An amicus curiae brief was filed by *Joseph P. Guidote, Jr.,* Outagamie county corporation counsel, on behalf of the Wisconsin Association of County Corporation Counsel.

An amicus curiae brief was filed by *David A. Strifling* and *Quarles & Brady LLP,* Milwaukee; *E. King Poor* and *Quarles & Brady LLP,* Chicago, Ill.; and *Michael R. Klipper, Christopher A. Mohr, David Ludwig,* and *Meyer, Klipper & Mohr, PLLC,* Washington, D.C., on behalf of First American CoreLogic, Inc., LexisNexis, the Real Estate Information Professionals Association, and the Software and Information Industry Association.

An amicus curiae brief was filed by *Mary E. Burke,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general, on behalf of the Wisconsin Department of Justice.

402

An amicus curiae brief was filed by *Paul W. Schwarzenbart* and *Lee, Kilkelly, Paulson & Younger, S.C.*, Madison, on behalf of Wisconsin Land Title Association, Inc.

An amicus curiae brief was filed by *Robert J. Dreps, Rebecca Kathryn Mason,* and *Godfrey & Kahn, S.C.*, Madison, on behalf of the Wisconsin REALTORS® Association, Wisconsin Freedom of Information Council, Wisconsin Broadcasters Association and Wisconsin Newspaper Association.

¶ 1. N. PATRICK CROOKS, J. This is a review of a published decision of the court of appeals.[1]

¶ 2. Petitioners, Grota Appraisals, LLC, and Michael L. Grota (Grota); Assessment Technologies of WI, LLC; and the Village of Thiensville (Thiensville); and cross-petitioners, the Village of Sussex and the Village of Sussex Custodian (collectively, Sussex); and the City of Port Washington (Port Washington)[2] seek review of a published decision of the court of appeals. The court of appeals' decision affirmed in part and reversed in part the decision of the Circuit Court for Waukesha County (the Sussex action), Judge Mark S. Gempeler, presiding. The court of appeals' decision also affirmed in part, reversed in part, and remanded the decision of the Circuit Court for Ozaukee County (the Thiensville and Port Washington actions), Judge Thomas R. Wolfgram, presiding. The defendant-respondent is Matthies Assessments, Inc. (Matthies Assessments). The plaintiff in the circuit court cases was WIREdata, Inc. (WIREdata). These cases deal with the interpreta-

---

[1] *WIREdata, Inc. v. Village of Sussex*, 2007 WI App 22, 298 Wis. 2d 743, 729 N.W.2d 757.

[2] American Family Insurance Company intervened in WIREdata's action against Port Washington and Matthies Assessments, Inc.

tion and application of Wisconsin's open records law, Wis. Stat. § 19.31 et seq. (2005–06).[3] These cases were considered together by the court of appeals, and they are considered together by this court as well.

¶ 3. There are six principal issues upon appeal. The first issue is whether WIREdata properly commenced the mandamus actions against the municipalities under the open records law, pursuant to Wis. Stat. § 19.37(1), when the municipalities had not denied WIREdata's requests for the records before WIREdata filed the mandamus actions.[4] The second issue is whether WIREdata's initial written requests were insufficient as a matter of law as to time and subject matter. The third issue is whether a municipality's independent contractor assessor is an authority under the open records law, so that the independent contractor assessor is a proper recipient of an open records request.[5] The fourth issue is whether a municipality

---

[3] All further references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted. We are utilizing the current version of the statutes so as to best provide guidance to future courts. There was only one instance where a relevant provision has been added since the commencement of these claims, and we note that one specific occurrence later in this opinion. No relevant provisions that are cited herein have changed since the commencement of these claims.

[4] We have combined the first issue presented by the petitioners ("Did the municipalities deny WireData's [sic] request prior to WireData [sic] filing the mandamus action?") and the third issue presented by the cross-petitioners ("Is a mandamus action properly commenced against municipalities under the Open Records Law pursuant to Wis. Stat. § 19.37(1) where the municipality never denied the request for records?") because they are largely duplicative.

[5] We have combined the fourth issue presented by the petitioners ("Are third party consultants, like Andrew Pelkey or

may avoid liability under the open records law by contracting with an independent contractor assessor for the collection, maintenance, and custody of its property assessment records, and by then directing any requester of those records to the independent contractor assessor who has custody of the sought-after records. The fifth issue is whether the court of appeals was mistaken in concluding that the petitioners and the cross-petitioners had not fulfilled WIREdata's initial open records requests, once they produced portable document files (hereafter, PDF or PDFs) with the requested information and gave those files to WIREdata. The sixth issue is whether the fees charged to WIREdata were fees that complied with the law for that requested output.

¶ 4. We hold as follows on the issues: based on the facts of the present case, WIREdata did not properly commence the mandamus actions against the municipalities under the open records law, pursuant to Wis. Stat. § 19.37(1), because the municipalities had not denied WIREdata's requests for the records before WIREdata filed the mandamus actions; WIREdata's initial written requests were not insufficient as a matter of law as to time and subject matter; a municipality's independent contractor assessor is not an authority under the open records law, so that the independent contractor assessor is not a proper recipient of an open records request; a municipality may not avoid liability under the open records law by contracting with an independent contractor assessor for the collection,

Impact Consultants, proper recipients of an open records request?") and the first issue presented by the cross-petitioners ("Does an 'authority' under the Open Records Law . . . include a municipality's independent contractor assessor?") because they are largely duplicative.

maintenance, and custody of its property assessment records and by then directing any requester of those records to the independent contractor assessor who has custody of the sought-after records; the court of appeals was mistaken in concluding that the petitioners and the cross-petitioners had not fulfilled WIREdata's initial open records requests, once they produced PDFs with the requested information and gave those files to WIREdata; and, because no fees were actually charged for the information the municipalities provided to WIREdata in the PDF format, the municipalities did not violate the open records law. Accordingly, the municipalities are not liable for any damages in the present action.

¶ 5. We reverse in part and affirm in part the decision of the court of appeals. *WIREdata, Inc. v. Village of Sussex,* 2007 WI App 22, ¶¶ 2, 3, 67–70, 298 Wis. 2d 743, 729 N.W.2d 757. In order to assist the reader in understanding our determinations, in relation to that decision, we disagree with the court of appeals' specific holdings as follows: that the three municipalities denied the open records requests of WIREdata and, thus, violated the open records law; that the PDFs were insufficient to comply with such open records requests; that the open records law requires access to the computerized database; that the "enhanced" demands did not require the creation of new records; and that WIREdata is entitled to fees and costs from each of the municipalities. However, we agree with the court of appeals' specific holdings as follows: that the municipalities are the responsible authorities under the open records law; that such responsibility cannot be shifted to independent contractor assessors; and that the initial written requests of WIREdata were valid and, thus, were not insufficient as to subject matter and length of time.

I

¶ 6. This litigation arose when WIREdata, which is a wholly owned subsidiary of the Multiple Listing Service, Inc., made a series of open records requests. The relevant requests asked Sussex, Thiensville, and Port Washington to provide WIREdata with information about their property assessments. WIREdata conceded that it intended to market and resell the requested information to assist real estate agents and brokers.

¶ 7. The three municipalities had contracted with private, independent contractor assessors to complete their property assessments. WIREdata initially made a request to all three municipalities directly that they provide the company with the requested data. WIREdata's "initial" request to Sussex and also its "initial" request to Thiensville asked the municipalities to provide the data to the company in an "electronic/digital" format. However, WIREdata's "initial" request to Port Washington did not specify a requested format for the data's provision. We note at the outset that WIREdata has admitted that all three municipalities offered the company copies of the relevant property information in written form.

¶ 8. Later, WIREdata made requests directly to the independent contractor assessors for those records to be provided to the company in the format that was created and maintained by those independent contractor assessors in a computerized database (the "enhanced" requests).[6] We note at the outset that WIREdata's attorney admitted at oral argument before

---

[6] WIREdata's "enhanced" requests attempted to dictate that the data would be provided to the company in a particular computerized format, which included fixed length, pipe delim-

this court that the company had never provided its "enhanced" requests directly to any of the municipalities in this action. While the data was not provided in the format requested in WIREdata's "enhanced" requests, the municipalities gave WIREdata access to the requested data using the PDF format, which complied with WIREdata's "initial" requests for the data either in no specified format or in an "electronic/digital" format. WIREdata was not satisfied with the provision of the relevant data using the PDF format.

## A. The Sussex action in the Waukesha County Circuit Court

¶ 9. Sussex had contracted with Grota Appraisals, LLC (Grota Appraisals), which was owned by Grota, to conduct the village's property assessments from January 1, 2000, to December 31, 2004. Upon completing a property assessment, Grota Appraisals' employees would enter the raw property appraisal data into a computer software program called Market Drive.

¶ 10. Grota also owns Assessment Technologies of WI, LLC (Assessment Technologies). Assessment Technologies was the company that had developed and copyrighted the Market Drive software. It then licensed the software to property appraisers, such as Grota Appraisals and Matthies Assessments. The software collates and arranges the collected raw property appraisal data into many different tables and reports for different categories of properties. Grota Appraisals sublicensed certain read-only capabilities of the software to

ited, or comma-quote outputs. The "enhanced" requests included WIREdata's request for 49 specific fields of data per property.

Sussex so that the village could print the tables and reports that the software assembled.

¶ 11. The open records law request involved in this action was submitted to Sussex on April 20, 2001 (the "initial" request). On that day, WIREdata sent a registered letter to the Sussex village assessor, which read, in relevant part, as follows:

> This is to formally request an electronic/digital copy of the detailed real estate property records (showing the specific characteristics of each parcel and the improvements thereupon) used and/or maintained by the Assessor in determining the proper assessments for each parcel within the Village of Sussex.

In this letter, WIREdata requested that the company be advised of "any cost involved . . . before incurring same."

¶ 12. In response, Sussex directed WIREdata to Grota Appraisals for a response. In turn, Grota Appraisals forwarded the matter on to Andrew Pelkey (Pelkey), the owner of Impact Consultants, Inc., which was the private computer programming firm that Assessment Technologies had contracted with to program the Market Drive software.

¶ 13. Only four days later, on April 24, 2001, WIREdata sent a letter to Sussex's counsel that cited the open records law as the legal basis for its request. The same letter also noted the potential for a mandamus action if Sussex denied its request. While the record before us does not reflect that the parties had any prior history of transactions between them, the letter boldly stated, "Based on the history of your governmental officials, I suspect that they may be giving some thought to denying my client's requests." The letter then continued by stating:

> The purpose of this letter is to inform you that if the request is denied in whole or in part or if the Municipality tries to charge an amount which is not the actual and direct cost of the copying, we will be seeking immediate relief via a mandamus action pursuant to Wis. Stat. § 19.37.

Also, it stated, "I am also concerned that your client may try to become 'creative' in ascertaining the costs involved." The letter continued by informing Sussex that, if WIREdata was "forced to start a mandamus action, [WIREdata] will also be seeking reimbursement of attorney fees."

¶ 14. On approximately May 4, 2001, Pelkey contacted WIREdata's Vice President and Chief Technology Officer, Thomas Curtis (Curtis). Curtis later stated that Pelkey gave him the understanding that Pelkey would help WIREdata get the data. By a letter dated May 4, 2001, Pelkey informed Sussex's counsel of the difficulties associated with providing the now "enhanced" data requested by Curtis directly to Pelkey. Pelkey noted that it would be very difficult to export the requested data from the Market Drive software into the now requested "enhanced" format of a computer file that supported a fixed length, pipe delimited, or comma-quote output. Pelkey stated that this was the case because the functionality of the Microsoft Word export feature worked fine "for simple 'list' reports" but did not work well for the property records report that WIREdata was requesting, which was "very complex." Pelkey also explained that the only other option available to export the requested data, albeit not in the newly requested "enhanced" format, from the software would be to use a laser printer to export individually, and print off, each of the approximately 2,000 property reports, which Pelkey stated would be a time consum-

410

ing, manual task. The records could not be printed and exported in a batch job because a single computer would not have enough disk space to perform that task. Pelkey further stated that the databases themselves could not be copied as a means of providing the raw data because "the design and format of the databases [are] . . . trade secret[s] and [are] the intellectual property of Assessment Technologies of WI, LLC."

¶ 15. As part of WIREdata's "enhanced" request, Curtis directly sent Pelkey an e-mail that requested 49 selected fields from the Market Drive software for each property, such as the number of stories for each house, each house's exterior type, and whether each house had a swimming pool. The e-mail further stated that "[a]ny type of electronic output and media" would be acceptable, such as fixed length, pipe delimited, and comma-quote. Importantly, when WIREdata's counsel was asked at oral argument before this court whether WIREdata had ever provided its "enhanced" request directly to any of the municipalities in this action, WIREdata's counsel admitted that the company had not provided the "enhanced" request to any of the municipalities themselves.

¶ 16. After receiving the "enhanced" request, Pelkey responded with an e-mail to Curtis that outlined the costs and terms of producing the requested records in the "enhanced" format using the Market Drive software. The e-mail detailed the six files per municipality that would be required to provide the highly detailed information WIREdata had requested using the "enhanced" file format. Pelkey informed WIREdata that it would need to pay a one-time fee of $6,600 to program, test, and export the relevant programs to produce the six data files in the "enhanced" format. The fee also included "the cost of running the export, checking the

result[,] and burning the CDs." The $6,600 fee apparently would cover the programming and testing fees for all three municipalities. On top of the fee to program and test the software that could provide the requested data in the "enhanced" file format, Pelkey informed WIREdata that an additional 50 cents per parcel fee would be required for the "enhanced" file request. Pelkey also noted that the data in the "enhanced" file format would be meant only for WIREdata and its subscribers to view and that, if WIREdata then redistributed the data in mass to any other company, WIREdata would have to charge that company for Pelkey's fee on top of any charges that WIREdata assessed to that company for the data. Pelkey stated, "Assuming you want all the data we can give you, the total cost will be substantially less than the cost of getting the data on paper, since each property [report] takes a minimum of 4 pages to print."

¶ 17. On May 21, 2001, WIREdata's attorney wrote Sussex's counsel a letter that declared Pelkey's response to be unacceptable. In this letter, WIREdata's attorney asserted that the assessor was requesting far more than the actual and necessary costs for reproducing the requested data. WIREdata's attorney also challenged Pelkey's attempt to restrict WIREdata's use of the data beyond its subscribers after the data was transferred.

¶ 18. The next day, on May 22, 2001, Sussex's counsel sent Grota a letter that asked him to explain how the costs and the fees in Pelkey's e-mail could be justified as being the " 'actual, necessary and direct costs' " to produce the requested data in the "enhanced" format. Sussex's counsel further wrote that, if Grota was unable to justify the costs, Sussex's counsel might make a recommendation to Sussex that was different

than the position that Pelkey's letter had taken. Sussex's counsel concluded by stating, "I believe that the Village of Sussex is not willing to go to litigation in order to protect your private interests, particularly if they conflict with the public records laws."

¶ 19. In a letter dated May 25, 2001, Pelkey explained the expenses. Pelkey stated that, although the Market Drive software had the ability to export a property record card into a text file, each property record must be exported one at a time, which would be highly labor intensive. Pelkey further explained that the software did not have the ability to export data into a comma delimited record format. Pelkey also reiterated that Assessment Technologies had granted Grota Appraisals the authority to give Sussex a copy of Market Drive's database for its internal use only, and, as a result, Sussex was without the authority to further distribute the database. Finally, Pelkey asserted that WIREdata's "enhanced" request was not an open records law request because WIREdata had requested that Assessment Technologies, which was a public company and not a municipal government, perform a data gathering task for WIREdata. Pelkey noted that WIREdata's "enhanced" request went beyond a simple open records request to include: (1) the collection of assessment data from many municipalities after each municipality convened its board of review; (2) the conversion of that data into a specific electronic format that was specified by WIREdata; and (3) the provision of annual updates to the requested information in the requested "enhanced" format (for which only a 15 cent per parcel fee would be applied).

¶ 20. On May 29, 2001, Sussex's counsel wrote WIREdata's attorney a letter advising WIREdata that an effort was being made to promptly respond to the

413

company's request. This letter also stated that Sussex would not become involved with any aspect of the issue that may involve a business transaction between WIREdata and Grota beyond fulfilling the core open records law request. The letter continued by stating that Sussex's interest was limited to ensuring that the open records law was followed.

¶ 21. On June 8, 2001, WIREdata filed a mandamus action in the Waukesha County Circuit Court against Sussex, Grota, and Grota Appraisals. Later, WIREdata amended its complaint to include Assessment Technologies as well.

¶ 22. On June 20, 2001, Grota provided an estimate to Sussex's counsel that included the estimated charges to provide just a "digital property record card" for each of the 2,685 parcels on Sussex's assessment roll. Apparently, this estimate included a digital output for the requested data, but it is not clear if this estimate was for the exact "enhanced" output format, including the provision of annual updates, that WIREdata desired, which may explain the differences in the quoted fees between the first and the second estimates. Grota stated that processing each record would take two minutes to complete, for a total of 5,370 minutes or 89.5 hours. The relevant "billing rate for someone capable with the proper training to complete this function is $35.00 per hour. Therefore[,] it would cost approximately $3,132 for [the] completion of this task." The estimate included all media that was necessary for data distribution. The letter from Grota to Sussex's counsel concluded by stating, "Please let me know of Wire Data's [sic] decision to proceed so we can schedule the time necessary for completion." On June 25, 2001, Sussex's counsel conveyed this information to Sussex's village administrator and asked him to pass the infor-

mation on to WIREdata on official village letterhead. It is important to note that this communication was from Sussex to WIREdata and that WIREdata never made the "enhanced" request to Sussex directly.

¶ 23. In August 2001 Assessment Technologies filed a lawsuit in the United States District Court for the Eastern District of Wisconsin seeking an injunction to prohibit WIREdata from infringing on its copyrights for the Market Drive software, and its resulting digital database compilations. In December 2002 that court held that Assessment Technologies owned the relevant copyright, which protected the company in regards to the Market Drive software and its entire derivative works. As a result, that court was satisfied that Assessment Technologies could decide whether or not to produce a derivate work of the Market Drive software, which was what that court felt WIREdata was requesting.

¶ 24. The United States Court of Appeals for the Seventh Circuit reversed the district court's decision. *See Assessment Techs. of WI, LLC v. WIREdata, Inc.,* 350 F.3d 640, 648 (7th Cir. 2003). The Seventh Circuit held that extracting the raw data that WIREdata sought from the Market Drive software's database did not violate federal copyright law. *Id.* at 644. The court was satisfied that Assessment Technologies had not created the database that it was trying to keep from WIREdata. *Id.* at 646. The court was further satisfied that Assessment Technologies had created only an empty database, which was a bin that the assessors were hired by the municipalities to fill with data. *Id.* Assessment Technologies had created the bin's compartments and the instructions that the software used to sort the data into the compartments, which the court held were the only innovations that were protected by

415

copyright law. *Id.* The Seventh Circuit held that Assessment Technologies did not have an ownership interest, or any other legal interest, in the data that the assessors had collected. *Id.* The court held that the raw data was in the public domain, so Assessment Technologies could not make its acquisition by WIREdata more costly. *Id.* at 645. The Seventh Circuit stated that there was no copyright restriction on WIREdata receiving a simple, electronic copy of the database.[7] As the petitioners aptly noted in their petition for review to this court, the Seventh Circuit was presented only with copyright issues under federal law, and the case before us involves different issues.

¶ 25. After the release of the federal appellate court's decision, Grota sent the requested data on Sussex's property records to WIREdata in an electronic and digital format, a PDF format. Again, WIREdata was not satisfied with the format of the data. The record reflects that, for all three state court actions, the parties in the federal court action had agreed to a "stand-still agreement" in the pending state court actions until the conclusion of the federal action.

---

[7] In its opinion, the Seventh Circuit stated:

To summarize, there are at least four possible methods by which WIRE data [sic] can obtain the data it is seeking without infringing AT's copyright; which one is selected is for the municipality to decide in light of applicable trade-secret, open-records, and contracts laws. The methods are: (1) the municipalities use Market Drive to extract the data and place it in an electronic file; (2) they use Microsoft Access to create an electronic file of the data; (3) they allow programmers furnished by WIREdata to use their computers to extract the data from their database—this is really just an alternative to WIREdata's paying the municipalities' costs of extraction, which the open-records law requires; (4) they copy the database file and give it to WIREdata to extract the data from.

*Assessment Techs. of WI, LLC v. WIREdata, Inc.,* 350 F.3d 640, 647–48 (7th Cir. 2003).

¶ 26. After the Seventh Circuit's decision was rendered on November 25, 2003, all parties moved for summary judgment in the pending mandamus action in the Waukesha County Circuit Court. The circuit court granted WIREdata's summary judgment motion but denied WIREdata's request for punitive damages on May 20, 2005. The circuit court held that there could be multiple authorities under the open records law, and that Sussex, Grota, Grota Appraisals, and Assessment Technologies were all authorities under the law. The circuit court also held that WIREdata's request was in the format required by the open records law and would not necessitate the creation of a new record. The circuit court determined that a proper response to WIREdata's request had not been provided. The circuit court also held that the provision of the PDF file with the requested data did not comply with either the Seventh Circuit's decision or the open records law.

B. The Thiensville action in the Ozaukee County Circuit Court

¶ 27. In October 1999, Thiensville contracted with Grota Appraisals to maintain its assessment records for the period between January 1, 2000, and December 31, 2001. A computer that was loaded with the Market Drive software was kept at the Thiensville Village Hall. This computer's Market Drive software provided read-only access to the database,[8] and it allowed for the printing of assessment reports in hard copy only.

_____

[8] Apparently, Thiensville could not input data on its own, manipulate the data, format the data, or make any changes to the data.

¶ 28. On April 20, 2001, WIREdata made a written open records law request to Thiensville. In this request (the "initial" request), WIREdata asked for the following:

> [A]n electronic/digital copy of the detailed real estate property records (showing the specific characteristics of each parcel and the improvements thereupon) used and/or maintained by the Assessor in determining the proper assessments for each parcel within the Village of Thiensville.

However, WIREdata wanted to be advised in writing of any costs that were associated with fulfilling its request before the municipality incurred the costs. The village forwarded the request to Grota Appraisals and informed WIREdata that it had done so.

¶ 29. Only four days later, on April 24, 2001, WIREdata's attorney sent Thiensville's counsel a letter that was nearly identical to the letter that WIREdata's attorney had sent to Sussex's counsel on the very same day. In this letter, WIREdata threatened Thiensville with a mandamus action if the village denied its open records request. Even though no previous transactions between the parties were reflected in the record before us, the letter to Thiensville's counsel from WIREdata's attorney boldly stated, "Based on the history of your governmental officials, I suspect that they may be giving some thought to denying my client's requests." The letter then continued by stating:

> The purpose of this letter is to inform you that if the request is denied in whole or in part or if the Municipality tries to charge an amount which is not the actual and direct cost of the copying, we will be seeking immediate relief via a mandamus action pursuant to Wis. Stat. § 19.37.

418

The letter further stated, "I am also concerned that your client may try to become 'creative' in ascertaining the costs involved." The letter continued by stating that, if WIREdata was "forced to start a mandamus action, [WIREdata] will also be seeking reimbursement of attorney fees." All of these statements mirrored WIREdata's letter to Sussex's counsel, which was sent on the very same day. Indeed, the letters from WIREdata's attorney to Thiensville and to Sussex were virtually identical.

¶ 30. On May 30, 2001,[9] WIREdata filed a mandamus action in the Ozaukee County Circuit Court against Thiensville, Grota Appraisals, and Grota. WIREdata later amended its complaint to include Assessment Technologies as well. On June 4, 2001, Thiensville's counsel wrote to WIREdata to inform the company that Thiensville officials were reviewing systems issues and were attempting to comply with WIREdata's "initial" request.

¶ 31. On June 29, 2001, after the mandamus action was filed, Thiensville's village administrator sent WIREdata a letter in an attempt to resolve the action that was similar to the one Sussex sent to WIREdata. The letter reiterated that the village had been willing all along to provide WIREdata "with hard copies [in written form] of all available records" and also stated that the village "was in the process of evaluating its appraiser's software capabilities" when WIREdata filed the mandamus action. That letter also attached a letter from Grota Appraisals that offered to export electronically individual property records from the Market Drive software in the same manner it had proposed for Sussex. Grota's letter attached a copy of the Sussex letter for reference.

---

[9] While the complaint was dated May 24, 2001, it was not filed with and stamped by the circuit court until May 30, 2001.

Once again, we note that the parties in the federal court action had agreed to a "stand-still" agreement in the pending state court actions until the federal action was completed.

¶ 32. After the Seventh Circuit rendered its decision on November 25, 2003, Pelkey sent WIREdata a PDF file that contained Thiensville's property records data. Thiensville, Grota Appraisals, Grota, Assessment Technologies, and WIREdata had all previously filed summary judgment motions, which were substantially similar to the ones they filed in the Sussex action.

¶ 33. The circuit court granted summary judgment in favor of Thiensville, the Village of Thiensville Custodian of Records,[10] Grota, Grota Appraisals, and Assessment Technologies on May 30, 2003. The circuit court also imposed costs on WIREdata. In its oral decision, the circuit court held that Thiensville was an authority under the open records law, one that had delegated its responsibility for maintaining the relevant records to another custodian. The circuit court also held that WIREdata's "initial" request did not satisfy the open record law's requirement of being reasonable in scope, and that WIREdata's later "enhanced" request was improperly directed to Pelkey and not to Thiensville. The circuit court further determined that the PDF was an electronic and digital file, which is what WIREdata had requested in its "initial" request.

C. The Port Washington action in the Ozaukee County Circuit Court

¶ 34. In November 2000 Port Washington entered into a contract with Matthies Assessments to perform its official assessments for the 2001 calendar

---

[10] This was a fictional party that WIREdata had included.

year. Matthies Assessments had a pre-existing licensing and purchase agreement with Assessment Technologies to utilize the Market Drive Software.

¶ 35. On April 25, 2001, WIREdata sent Port Washington's treasurer a letter indicating that the company would be sending a letter requesting property data to Matthies Assessments. WIREdata described its request (the "initial" request) as being for "detailed property information or assessor information such as square footage, age, number of bedrooms, number of baths, property class, etc." WIREdata also stated that the company was "interested in the sales data, such as the sale date, sale price, if available, transfer fee, [and] type of transfer . . . ." WIREdata also asked Port Washington to include in the data it produced the number of parcels, a record layout that was current, a copy of the current property record card it was using, and ten randomly selected data sheets. Furthermore, WIREdata wanted "to know when the last complete revaluation or reassessment was done and when the next complete revaluation is scheduled." WIREdata concluded its letter by asking Port Washington's treasurer to contact the company to discuss the approximate cost to reproduce the data and the media type in which the data would be reproduced. Importantly, WIREdata's "initial" request to Port Washington did not specify any particular format whatsoever for the requested data's delivery.

¶ 36. On May 4, 2001, Port Washington's treasurer sent a letter to WIREdata asking the company to request the data and its associated charges directly from Matthies Assessments. Port Washington's treasurer signed a release allowing Matthies Assessments to release the relevant property information to WIREdata. As a result, on May 9, 2001, WIREdata sent a

421

letter that was almost identical to the one it sent Port Washington's treasurer to Ernest Matthies (Matthies) of Matthies Assessments (essentially, another "initial" request).

¶ 37. On May 22, 2001, Matthies sent WIREdata a response to its May 9 letter. In his response, Matthies stated he assumed that WIREdata was "requesting a copy of the assessment data base used to store assessment data for the City of Port Washington." Matthies further informed WIREdata that he had recently completed the process of putting Port Washington's data "on a new assessment software system called 'Market Drive'. . . ." Matthies also conveyed to WIREdata that he had spoken with Grota, who had informed Matthies that the license and purchase agreement that Matthies Assessments had with Assessment Technologies prohibited Matthies Assessments from complying with WIREdata's request. Matthies directed WIREdata to Grota for an explanation of the relevant licensing agreement. However, importantly, Matthies specifically stated, "Assessment data printouts of individual parcels are available upon request for a reasonable fee. Access to assessment data in this format is available to the public upon request." WIREdata did not request any particular format whatsoever for the requested data's provision in its "initial" request to Port Washington.

¶ 38. On June 12, 2001,[11] WIREdata filed a mandamus action against both Port Washington and Matthies Assessments in the Circuit Court for Ozaukee County. WIREdata later amended its complaint to include Assessment Technologies as well. After the dis-

[11] The complaint was dated June 8, 2001, but the complaint was not filed with and stamped by the circuit court until June 12, 2001.

trict court's decision in the copyright matter, the circuit court started to address the Thiensville and the Port Washington cases together. Once again, we note that the parties in the federal court action agreed to a "stand-still" agreement for all three state court actions until the federal action was completed.

¶ 39. After the Seventh Circuit's decision was rendered on November 25, 2003, Pelkey sent WIREdata a PDF that contained the requested property records for Port Washington. The parties all had previously filed motions for summary judgment. The circuit court granted the summary judgment motions of Port Washington and Matthies Assessment on May 30, 2003. The circuit court also denied WIREdata's summary judgment motion, and it imposed costs against WIREdata for the action.

D. The court of appeals' decision

¶ 40. As previously noted, all of the appeals from the three circuit court decisions were considered together on appeal by the court of appeals.

¶ 41. On January 3, 2007, the court of appeals, in a published decision, held that the open records law allowed WIREdata the opportunity to access the databases of the independent contractor assessors to examine and to copy the requested property assessment records. As a result, the court of appeals held that the municipalities had violated the open records law when they did not give WIREdata the requested data in the "enhanced" request's format and instead provided the data to the company in PDFs. However, the court of appeals only held the municipalities, and not their independent contractor assessors, liable for the open records law violations. The court of appeals stated that

municipalities could not evade their duties under the open records law by having independent contractor assessors create and maintain their property assessment records. The court of appeals also rejected "all challenges to the sufficiency of the open records requests and [to] the existence of the denials of those requests." *WIREdata, Inc.,* 298 Wis. 2d 743, ¶ 2.

¶ 42. As a result, the court of appeals, in the Sussex action, affirmed the Circuit Court of Waukesha County to the extent that the circuit court held that: (1) Sussex was an authority and was responsible for the relevant violations of the open records law; (2) WIREdata had submitted a valid request under the open records law that Sussex had improperly denied; (3) the PDF did not comply with the open records law's requirements; (4) the open records law required that WIREdata be given access to the Market Drive software's computerized database; and (5) WIREdata was entitled to receive its actual, reasonable, and customary fees and costs. However, the court of appeals, in the Sussex action, reversed the circuit court's holding that Sussex's independent contractor assessor was responsible for paying WIREdata's reasonable costs and attorneys fees. Finally, the court of appeals remanded the Sussex action to the circuit court for proceedings to determine the appropriate costs and fees to be awarded to WIREdata.

¶ 43. In the combined Thiensville and Port Washington actions, the court of appeals affirmed the Circuit Court for Ozaukee County to the extent that it had held that Port Washington and Thiensville were authorities under the open records law. However, the court of appeals reversed the circuit court to the extent that it had held that WIREdata's requests were insufficient under the open records law, and to the extent that the

circuit court had held "that the PDF satisfied [WIREdata's] requests in any event." *Id.*, ¶ 3. Finally, the court of appeals remanded the combined Thiensville and Port Washington actions to the circuit court for proceedings to determine what were the appropriate costs and fees to be awarded to WIREdata.

II

¶ 44. These cases are before us on review in regard to summary judgment motions, which were decided by the circuit courts. We review a circuit court's grant or denial of a summary judgment motion de novo and independently of either the circuit court or the court of appeals; however, we apply the same methodology and benefit from their analyses. *AKG Real Estate, LLC v. Kosterman,* 2006 WI 106, ¶ 14, 296 Wis. 2d 1, 717 N.W.2d 835. We must determine whether the complaint states an actionable claim. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Summary judgment is only appropriate if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). Summary judgment materials, including pleadings, depositions, answers to interrogatories, and admissions on file are viewed in the light most favorable to the nonmoving party. *Rainbow Country Rentals v. Ameritech Publ'g,* 2005 WI 153, ¶ 13, 286 Wis. 2d 170, 706 N.W.2d 95.

¶ 45. The interpretation and application of a statute, such as the open records law, to undisputed facts presents a question of law that we review de novo. *Osborn v. Bd. of Regents of the Univ. of Wis. Sys.,* 2002

WI 83, ¶ 12, 254 Wis. 2d 266, 647 N.W.2d 158. However, we benefit from the analyses of both the circuit court and the court of appeals. *Id.*

## III

¶ 46. The first issue on review is whether WIRE-data properly commenced the mandamus actions against the municipalities under the open records law, pursuant to Wis. Stat. § 19.37(1), when the municipalities had not denied WIREdata's requests for the records before WIREdata filed the mandamus actions.

¶ 47. On review, the petitioners and the cross-petitioners claim that the municipalities did not deny WIREdata's requests for records and, accordingly, that a mandamus action was improper. They note that the relevant statute does not provide a concrete time frame for a response to an open records request. The petitioners and the cross-petitioners argue that, in cases such as this one where the requests are complex, municipalities should be afforded latitude in regard to the time frame for their response. They argue that the municipalities acted promptly and appropriately given the circumstances. Grota further argues that Pelkey's communications may not be deemed to be either a denial or a delaying of the requests because Pelkey was neither an authority nor a proper recipient of the requests. Finally, the petitioners and the cross-petitioners argue that the court of appeals erred by determining that the municipalities delayed too long in responding to the requests.

¶ 48. On review, WIREdata argues that, even though the municipalities did not issue any express denials to the company's requests, the municipalities failed to respond adequately to those requests. WIRE-

data cites three court of appeals cases[12] in support of its assertion that the relevant statute requires either a grant or a denial of an open records request, and WIREdata argues that the municipalities did neither. However, WIREdata also asserts that Pelkey's communications made it clear that the requests were denied.

¶ 49. For the reasons discussed in detail below, based on the facts of the present case, we hold that WIREdata did not properly commence the mandamus actions against the municipalities under the open records law, pursuant to Wis. Stat. § 19.37(1), because the municipalities had not denied WIREdata's requests for the records before WIREdata filed the mandamus actions.

¶ 50. Wisconsin Stat. § 19.35(4)(a) requires an authority, upon a request for any record, to "as soon as practicable and without delay, either fill the request or notify the requester of the authority's determination to deny the request in whole or in part and the reasons therefor." Wisconsin Stat. § 19.37(1), in relevant part, provides that, "[i]f an authority withholds a record or a part of a record or delays granting access to a record or part of a record after a written request for disclosure is made, the requester may pursue . . ." a cause of "action for mandamus asking a court to order [the] release of the record." Wis. Stat. § 19.37(1)(a).

¶ 51. It is important to note that WIREdata admitted in its brief to this court that Grota was always willing to supply copies in written form of the requested

---

[12] *State ex rel. Blum v. Bd. of Educ.*, 209 Wis. 2d 377, 565 N.W.2d 140 (Ct. App. 1997); *WTMJ, Inc. v. Sullivan*, 204 Wis. 2d 452, 555 N.W.2d 140 (Ct. App. 1996); *Oshkosh Nw. Co. v. Oshkosh Library Bd.*, 125 Wis. 2d 480, 373 N.W.2d 459 (Ct. App. 1985).

information for each of the three municipalities. The record also reflects that the municipalities offered WIREdata printouts in written form of the relevant property records in a timely manner, but WIREdata refused these offers. Grota's attorney stated at oral argument before this court that the full records, in written form, were offered to WIREdata within weeks of the company's requests. When pressed for a more specific time frame, the attorney stated that, to the best of his recollection, the records for Sussex, in written form, were provided to WIREdata approximately two weeks after the company's request to Sussex. As a result, we are satisfied that the municipalities allowed WIREdata to receive copies of the relevant records, which appeared in written form, for purposes of Wis. Stat. § 19.35(1)(b).

¶ 52. Contrary to WIREdata's arguments, the court of appeals' decision in *Oshkosh Northwest Co.* (*Oshkosh*) is factually distinguishable from the present case because the authority in *Oshkosh* denied the requester access to the requested records, whereas the municipalities in the present case did not deny WIREdata's requests. *Oshkosh Nw. Co. v. Oshkosh Library Bd.*, 125 Wis. 2d 480, 481, 373 N.W.2d 459 (Ct. App. 1985). We further note that, contrary to WIREdata's assertions, *Blum* is not persuasive in deciding this issue, because *Blum* presented a very different situation, one where the court of appeals held that a school district had properly refused to produce the interim per-class grades of another student to the requesting student. *State ex rel. Blum v. Bd. of Educ.*, 209 Wis. 2d 377, 385–86, 565 N.W.2d 140 (Ct. App. 1997).

¶ 53. We are further satisfied that the court of appeals' decision in *WTMJ, Inc.* (*WTMJ*) does not compel a different result on this issue. *WTMJ, Inc. v. Sullivan*, 204 Wis. 2d 452, 455, 555 N.W.2d 140 (Ct.

App. 1996). In *WTMJ,* a Milwaukee TV station, WTMJ, requested certain records in regard to Jeffrey Dahmer and Jesse Anderson. *Id.* These two men were killed while both were inmates at the Columbia Correctional Institution. *Id.* The record custodian for the Wisconsin Department of Corrections (DOC) replied to WTMJ that the two sets of files would " 'not be made available to you for your inspection at this time at the request of the Columbia County District Attorney's office and the Columbia County Sheriff's office. Once the criminal investigation is completed[,] redacted copies of the records will be made available for inspection.' " *Id.* at 455–56. In March 1994, a redacted copy of Jeffrey Dahmer's institutional file was provided to the Milwaukee Journal, and the custodian told WTMJ that the station "was entitled to copies of that file." *Id.* at 456. However, the custodian stated, " 'As noted above, you cannot review any of Mr. Dahmer's file from March, 1994, to [the present] date until the investigation is completed.' " *Id.*

¶ 54. WTMJ filed a mandamus action to obtain the records it requested. *Id.* However, WTMJ's entitlement to the records was never litigated because "the State soon agreed to provide the requested records, with two insignificant exceptions[,] which WTMJ [did] not contest." *Id.* WTMJ requested its attorneys' fees, because WTMJ argued that it had prevailed in the mandamus action, but the DOC disagreed "because it believed that it had in good faith released the records of its own volition." *Id.* In upholding the awarding of attorneys' fees, the court of appeals held that, contrary to the DOC's assertion, the DOC's original response that it would release the records after the criminal investigation was completed was a denial. *Id.* at 457. The court of appeals stated, "The words 'will not be

made available to you at this time' and 'you cannot review' are not words associated with [an] acceptance of WTMJ's demand for records." *Id.* The court of appeals further stated, "We do not believe that the DOC's qualification that some of the records would be released when an investigation was completed [was] sufficient to change the December 1 letter from a denial to an agreement to produce. The letter did not indicate when the investigation would terminate." *Id.* The court of appeals held that there were two statutory choices, which were "comply or deny." *Id.* (citing *State ex rel. Auchinleck v. Town of LaGrange,* 200 Wis. 2d 585, 597, 547 N.W.2d 587 (1996) (holding that a requesting party may immediately bring an enforcement action if an open records law request is denied and that such actions are exempt from the notice provisions of Wis. Stat. § 893.80(1))).

¶ 55. We are satisfied that, under the circumstances here, there were not any denials by the relevant authorities, the municipalities, of WIREdata's requests. This case is distinguishable because, in the present case, unlike the custodian in *WTMJ,* the municipalities were diligently working toward ascertaining the technical and legal requirements of producing the records. *WTMJ, Inc.,* 204 Wis. 2d at 457. Furthermore, the municipalities in the present case did not deny WIREdata access to the requested records " 'at this time' " and also did not tell WIREdata that " 'you cannot review' " the requested records. *Id.* The municipalities in the present case also did not state that the requested records would only be released after the completion of an investigation without a certain termination date. *Id.* That was a response that the court of appeals in *WTMJ* found persuasive in calling the DOC's actions in that case a denial. *Id.* Furthermore, the municipalities here

offered WIREdata paper copies of the requested records as an alternative, which is yet another reason for our determination that there was no denial in the present case, especially when compared to the facts of *WTMJ*.[13] Furthermore, as previously noted, all of the parties in the federal court action agreed to a "stand-still" agreement for the state court actions until the federal copyright action concluded. The record reflects that WIREdata received the requested data in PDFs shortly after the conclusion of the federal action.

■

¶ 56. We are satisfied that, in cases such as these where the requests are complex, municipalities should be afforded reasonable latitude in the time frame for their responses. In its amicus brief, the Wisconsin Department of Justice (DOJ) appropriately expressed a concern that the court of appeals' opinion could be construed as allowing a mandamus action, even where municipalities were acting diligently in attempting to respond in a timely manner to requests under the open records law. As the DOJ stated, "An authority should not be subjected to the burden and expense of a premature public records lawsuit while it is attempting in good faith to respond, or to determine how to respond, to a public records request." We further concur with the DOJ's opinion that what constitutes a reasonable time for a response by an authority "depends on the nature of the request, the staff and other resources available to the authority to process the request, the extent of the request, and other related considerations."

---

[13] We note that the municipalities' offers of paper copies of the requested records demonstrated a good faith effort on the municipalities' part to provide WIREdata with the requested information quickly. We do not decide whether such paper copies would actually satisfy WIREdata's request.

Accordingly, whether an authority is acting with reasonable diligence in a particular case will depend upon the totality of the circumstances surrounding the particular request.

¶ 57. We further agree with the petitioners and the cross-petitioners that the municipalities acted promptly given the circumstances of this case. The record reflects that questions on the "enhanced" format that WIREdata desired the data to be produced in were still going back and forth in May of 2001, which was several weeks after WIREdata made its initial request. This shows that the municipalities were still attempting in good faith to comply with the difficult logistical and legal aspects of WIREdata's complex and large "enhanced" requests at that time.

¶ 58. We are satisfied that the municipalities, as the authorities under the open records law, acted reasonably in the present case. The open records law, specifically Wis. Stat. § 19.35(4)(a), requires an authority to either comply with or deny a request "as soon as practicable." Here, WIREdata filed the mandamus actions without first giving the municipalities an appropriate amount of time to comply with its requests, especially given all of the complex copyright and licensing issues, and given the large volume of data requested. Here, WIREdata threatened both Sussex and Thiensville with mandamus actions only four days after the company's "initial" requests. Furthermore, WIREdata filed the mandamus actions shortly thereafter and despite the communications WIREdata had received from the municipalities that they were attempting to work through the complex issues to provide the requested data. Additionally, the record reflects that the municipalities offered to provide WIREdata with paper copies of the requested information, which WIREdata

turned down. As a result of the foregoing discussion, we are satisfied that the mandamus actions in the present case were filed prematurely.

¶ 59. In summary, based on the facts of the present case, we hold that WIREdata did not properly commence the mandamus actions against the municipalities under the open records law, pursuant to Wis. Stat. § 19.37(1), because the municipalities had not denied WIREdata's requests for the records before WIREdata filed the mandamus actions.

## IV

¶ 60. The second issue on review is whether WIREdata's initial written requests were insufficient as a matter of law as to time and subject matter.

¶ 61. On review, the petitioners and the cross-petitioners claim that WIREdata's initial written requests were insufficient as a matter of law, because WIREdata did not properly define the time and subject matter limitations on its requests. The petitioners and the cross-petitioners argue that, under Wis. Stat. § 19.35(1)(h), WIREdata's requests were too broad to be valid because the requests contained no such limitations.

¶ 62. On review, WIREdata argues that the municipalities did not assert, as a reason for denying the company's requests, that WIREdata's requests were too broad. As a result, WIREdata argues that the petitioners and the cross-petitioners waived this argument because the alleged denials were based on copyright issues, not on claims that the requests were overbroad. Furthermore, WIREdata argues that its requests must have been understood because Pelkey was able to set up a pricing structure for the provision of the "enhanced"

data in his May 28, 2001, letter. WIREdata further contends that the requests were sufficient on their face. Finally, WIREdata argues that Wis. Stat. § 19.35(1)(h) does not require a requester to include a precise list of the desired data or a precise limitation as to the time frame.

¶ 63. For the reasons discussed in detail herein, we conclude that WIREdata's initial written requests were not insufficient as a matter of law in regard to subject matter and length of time.

¶ 64. Wisconsin Stat. § 19.35(1)(h), in relevant part, provides that a request "is deemed sufficient if it reasonably describes the requested record or the information requested. However, a request for a record without a reasonable limitation as to subject matter or length of time represented by the record does not constitute a sufficient request."

¶ 65. In *Schopper,* the court of appeals affirmed the circuit court's order that dismissed the complaint of Allan Schopper (Schopper). *Schopper v. Gehring,* 210 Wis. 2d 208, 210, 565 N.W.2d 187 (Ct. App. 1997). Schopper had appealed the denial of his request, which had been made under the open records law, "to obtain a three-hour interval of 911 calls recorded by the Outagamie County Sheriff's Department on November 29, 1995." *Id.* The court of appeals agreed with the circuit court's determination that Schopper's request was impermissibly broad because his "request lacked a reasonable limitation as to the subject and length of time for the records requested." *Id.*

¶ 66. Schopper had been arrested for a traffic violation on the night for which he requested the 911 calls. *Id.* The sheriff responded to Schopper's request by

stating that 911 calls were recorded on 60 channels and that, as a result, "Schopper's request was too broad and that he would have to narrow or clarify the scope of his request before it could be acted upon." *Id.* at 211. Schopper never modified his request to include either a specific event or a specific time frame as requested, and, when the sheriff's department did not provide him with the requested information, Schopper filed a mandamus action. *Id.* Because Schopper's request included three hours of tape on each of the department's 60 channels that were allocated to 911 calls, plus the preparation of a transcript for each of these tapes and a log to identify the time of each transmission, the circuit court "determined that the request was unreasonably burdensome as well as overbroad and ordered the complaint dismissed." *Id.* at 212.

¶ 67. The court of appeals stated, "While this state favors the opening of public records to public scrutiny, we may not in furtherance of this policy create a system that would so burden the records custodian that the normal functioning of the office would be severely impaired." *Id.* at 213. That court was satisfied that "Schopper's request was far in excess of that which was necessary for his announced purpose." *Id.* The court of appeals held that, because Schopper "could reasonably have limited his request but failed to do so, and because the request placed an unreasonable burden upon the custodian in preparation of the documents necessary to fulfill the request . . .," the circuit court did not err in finding Schopper's "request to be so over broad as to be inadequate under the open records law." *Id.* Accordingly, the court of appeals concluded that the circuit court had "properly ordered the dismissal of Schopper's open record[s]complaint." *Id.*

435

¶ 68. We note, as the court of appeals pointed out, that the petitioners' and the cross-petitioners' arguments here, on this issue, were not raised until quite late in the litigation. We need not consider such after the fact reasons for nondisclosure. *See Oshkosh Nw. Co.,* 125 Wis. 2d at 484. However, we are satisfied that WIREdata's requests were not insufficient. As will be discussed in more detail later in this opinion, WIREdata's requests were not insufficient as to time and subject matter because the municipalities were able to fulfill WIREdata's requests using the PDF's that were provided to WIREdata. Furthermore, there never appeared to be a dispute between the parties, before the court actions commenced, on what WIREdata was requesting or on whether the amount of information that was being requested was too great to be produced. Indeed, Grota's concerns with WIREdata's requests were primarily based on copyright, licensing, and programming issues with the Market Drive software.

¶ 69. In summary, we conclude that WIREdata's initial written requests were not insufficient as a matter of law in regard to time and subject matter.

V

¶ 70. The third issue before us is whether a municipality's independent contractor assessor is an authority under the open records law, so that such an assessor is a proper recipient of an open records request.

¶ 71. On review, the municipalities argue that the court of appeals erred when it held that the independent contractor assessors were not authorities under the open records law. The municipalities maintain that an "authority" under the open records law includes

independent contractors who fill statutory appointments to local public offices. The municipalities then argue that the open records statutes apply to such authorities. In contrast, the independent contractor assessors argue that the definition of public office that is set forth in Wis. Stat. § 19.42(7w)(d) controls and defines an "appointive office" as expressly excluding "a position filled by an independent contractor." The independent contractor assessors argue that this express exclusion carries over to Wis. Stat. § 19.32(1dm). However, those assessors also argue that, regardless of the independent contractor exclusion in § 19.42(7w)(d), they cannot be considered to be filling "public offices" under § 19.32(1dm). Furthermore, the assessors assert that, because they are not authorities under the open records law, the mandamus actions that were filed against them by WIREdata should have been dismissed.

¶ 72. On review, WIREdata argues that such assessors should be deemed to be proper recipients of open records requests because to hold otherwise would slow down the process of satisfying open records requests. Furthermore, WIREdata argues that Pelkey was acting as an agent for the municipalities.

■■

¶ 73. For the reasons discussed in detail below, we are satisfied that a municipality's independent contractor assessor is not an authority under the open records law, so that such an assessor is not a proper recipient of an open records request.

¶ 74. Wisconsin Stat. § 19.32(1), in relevant part, states, " 'Authority' means any of the following having custody of a record: a state or local office, elected official, agency, board, commission, committee, council, department or public body corporate and politic created by constitution, law, ordinance, rule or order; . . . or a

formally constituted subunit of any of the foregoing." This statute clearly envisions a public entity, a quasi-governmental corporation, or a governmental entity, not an independent contractor hired by such a public or governmental entity, as being the "authority" for purposes of the open records law.

¶ 75. Wisconsin Stat. § 19.32(1dm)[14] states, " 'Local public office' has the meaning given in s. 19.42(7w), and also includes any appointive office or position of a local governmental unit in which an individual serves as the head of a department, agency, or division of the local governmental unit," but that statute "does not include any office or position filled by a municipal employee, as defined in s. 111.70(1)(i)." Furthermore, Wis. Stat. § 19.42(7w) reads, in relevant part, as follows:

> "Local public office" means any of the following offices, except an office specified in sub. (13):[15]
>
> (a) An elective office of a local governmental unit.
>
> (b) A county administrator or administrative coordinator or a city or village manager.
>
> (c) An appointive office or position of a local governmental unit in which an individual serves for a specified term, except a position limited to the exercise of ministerial action or a position filled by an independent contractor.
>
> . . . .

---

[14] Wisconsin Stat. § 19.32(1dm) was added to the Wisconsin statutes in 2003, and its text has remained unchanged since that time.

[15] Wisconsin Stat. § 19.42(13) defines "State public office[,]" which is not relevant to the present case.

(d) An appointive office or position of a local government which is filled by the governing body of the local government or the executive or administrative head of the local government and in which the incumbent serves at the pleasure of the appointing authority, *except* a clerical position, a position limited to the exercise of ministerial action or *a position filled by an independent contractor.*

(Emphasis added.) We are satisfied that this statute clearly envisions a public or governmental entity, not an independent contractor hired by the public or governmental entity, as being the "authority" for purposes of the open records law. Indeed, as noted, Wis. Stat. § 19.42(7w)(c)-(d) excludes from the definition of "Local public office" any "position filled by an independent contractor." While Wis. Stat. § 61.197(1)(f) allows villages to appoint an independent contractor to be the village assessor, and while Wis. Stat. § 62.09(1)(c) allows cities to appoint an independent contractor to be the city assessor, nothing in either of those statutes changes or modifies the language of Wis. Stat. § 19.32(1dm) or Wis. Stat. § 19.42(7w)(c)-(d).

¶ 76. The definition of local public office that is set forth in Wis. Stat. § 19.42(7w)(c)-(d) controls and defines an "appointive office" as expressly excluding "a position filled by an independent contractor." We are satisfied that this express exclusion carries over to Wis. Stat. § 19.32(1dm) because of the specific cross-reference in § 19.32(1dm) to § 19.42. However, regardless of the independent contractor exclusion in § 19.42(7w)(c)-(d), the independent contractor assessors do not hold a local public office under § 19.32(1dm) for another reason, which is that an independent contractor assessor does not serve "as the head of a department, agency, or division of the local governmental unit . . . ."

439

¶ 77. We hold that, here, the municipalities themselves were the "authorities" for purposes of the open records law. Accordingly, only the municipalities were proper recipients, here, of the relevant open records requests. As such, a communication from an independent contractor assessor should not be construed as a denial of an open records request.

¶ 78. In summary, we are satisfied that a municipality's independent contractor assessor is not an authority under the open records law, so that such an assessor is not a proper recipient of an open records request.

## VI

¶ 79. The fourth issue on review is whether a municipality may avoid liability under the open records law by contracting with an independent contractor assessor for the collection, maintenance, and custody of its property assessment records, and by then directing any requester of those records to such an assessor.

¶ 80. On review, the municipalities argue that independent contractor assessors are authorities who can be held liable under the open records law in lieu of the municipalities. The municipalities further claim that the contractor exception in Wis. Stat. § 19.36(3) does not apply to the present case because the contract here was between two authorities. Furthermore, the municipalities argue that, just because a contract exists between a municipality and an independent contractor assessor, this does not mean that a municipality can order such an assessor to turn over the relevant database. In contrast, the assessors argue that municipalities may not transfer their legal status as authorities to such assessors by outsourcing data collection. The

assessors also argue that the municipalities need not physically have custody of the requested records to be the proper party to a mandamus action.

¶ 81. On this issue, WIREdata argues that the independent contractor assessors are not authorities under the open records law. WIREdata proffers that the municipalities are the only authorities in the present cases. WIREdata argues that Wis. Stat. § 19.36(3) holds authorities liable for the failure to make records available that were produced or collected under a contract.

■

¶ 82. For the reasons discussed in detail herein, we hold that the municipalities here may not avoid liability under the open records law by contracting with independent contractor assessors for the collection, maintenance, and custody of property assessment records, and by then directing any requester of those records to the independent contractor assessors. As we noted previously, the municipalities here are the authorities for purposes of the open records law.

¶ 83. As Wis. Stat. § 19.37(2), in relevant part, states, "Costs and fees shall be paid by the authority affected or the unit of government of which it is a part, or by the unit of government by which the legal custodian under s. 19.33 is employed and may not become a personal liability of any public official." The statute discusses governmental or quasi-governmental entities, not private citizens, corporations,[16] or even individual public officials, as being the parties responsible for paying any damages or fees under the statute to a prevailing requester. Given that we have held that the independent contractor assessors are not authori-

---

[16] The independent contractor assessors here were incorporated as limited liability corporations.

ties under the open records law, and being satisfied that the statutes do not otherwise provide for independent contractor assessors' liability, we hold that the municipalities retain sole liability in cases such as the present ones for any damages or fees resulting from a violation.

¶ 84. Wisconsin Stat. § 19.36(3) further supports our holding on this issue. The statute, in relevant part, states, "[E]ach authority shall make available for inspection and copying under s. 19.35(1) any record produced or collected under a contract entered into by the authority with a person other than an authority to the same extent as if the record were maintained by the authority." Wis. Stat. § 19.36(3). Accordingly, the statute's plain language makes an authority, here the municipality, solely responsible for any liability for failing to comply with the open records law.

¶ 85. Our holding here also comports with prior Wisconsin case law. In one relevant case, the court of appeals held that two newspapers could have access to a memorandum of understanding that ended a lawsuit between a school district and its former superintendent even though the agreement resided in the private law firm files of the district's non-employee attorney who had prepared the memorandum. *Journal/Sentinel, Inc. v. Shorewood Sch. Bd.*, 186 Wis. 2d 443, 446, 521 N.W.2d 165 (Ct. App. 1994). The court of appeals held that the law firm was not an authority under the open records law. *Id.* at 452. However, the court of appeals held that the school board was an authority, and also held that the memorandum was a record that was produced under a contract entered into by the authority, which made the memorandum subject to disclosure. *Id.* at 452–53.

¶ 86. Additional Wisconsin case law supports our decision on this issue. In *Blum,* the court of appeals

442

reiterated that an authority "may not avoid the public access mandate of Chapter 19 . . . 'by delegating both [a] record's creation and custody to an agent.' " *State ex rel. Blum,* 209 Wis. 2d at 382, citing *Journal/Sentinel, Inc.,* 186 Wis. 2d at 452–53.

¶ 87. We disagree with the municipalities' contention that *Machotka v. Village of West Salem,* 2000 WI App 43, 233 Wis. 2d 106, 607 N.W.2d 319, and *Building and Construction Trades Council of South Central Wisconsin v. Waunakee Community School District,* 221 Wis. 2d 575, 585 N.W.2d 726 (Ct. App. 1998), control to absolve the municipalities of their responsibility for any violations of the open records law. In both of the cited cases, the requesters were seeking records that fell outside of the parameters of the contractual obligations between the authorities and their independent contractors. *See Machotka,* 233 Wis. 2d 106, ¶ 9; *Bldg. & Constr. Trades Council of S. Cent. Wis.,* 221 Wis. 2d at 580–81. In contrast to those two cases, here, the municipalities had contracted with the independent contractor assessors to collect and maintain the records that WIREdata was seeking.

¶ 88. While the municipalities may not avoid liability in the present cases for any violations of the open records law just because they employed independent contractor assessors, as previously noted, we are satisfied that the municipalities acted reasonably and promptly, given the circumstances. As a result, the municipalities are not liable in the present cases.

¶ 89. In summary, we hold that a municipality may not avoid liability under the open records law by contracting with an independent contractor assessor for the collection, maintenance, and custody of its property assessment records, and by then directing any requester of those records to such an assessor.

¶ 90. The fifth issue before us is whether the court of appeals was mistaken in concluding that the petitioners and the cross-petitioners had not fulfilled WIREdata's initial open records requests, once they produced PDFs with the requested information and gave those files to WIREdata.

¶ 91. The petitioners and the cross-petitioners claim that, by providing WIREdata with the PDFs, they satisfied the company's open records requests because the company requested an electronic, digital format of the data. Furthermore, the petitioners and the cross-petitioners maintain that providing the requested information to WIREdata in any format, including the PDF format, was more than the open records law required because the provision of the relevant data required the creation of a new record, which is explicitly exempted under Wis. Stat. § 19.35(1)(L). The petitioners and the cross-petitioners assert that, when WIREdata received the PDF files, the company received all of the relevant information that was in the possession of either the assessors or the municipalities. Finally, they argue that the quality of the data that WIREdata received in the PDFs was the exact same quality of data as the company would have received using any other format, including using the Market Drive software. As a result, they assert that WIREdata's only remaining complaint is that the data's format was not optimal for its needs, which is not an appropriate claim upon which a writ of mandamus should issue.

¶ 92. WIREdata argues that the PDFs were not sufficient responses to even its "initial" requests for the records in an electronic, digital format. WIREdata further contends that the PDFs were not responsive to

444

its "enhanced" requests. WIREdata asserts that a records custodian should not be able to produce such records in a format that it does not typically keep the records in. WIREdata argues that Pelkey was an agent of the municipalities, and, therefore, that WIREdata's later "enhanced" requests for a specific data format had to be followed, in lieu of following its first requests for any electronic, digital file.

¶ 93. For the reasons discussed in detail below, we are satisfied that the court of appeals was mistaken in concluding that the petitioners and the cross-petitioners had not fulfilled WIREdata's initial open records requests once they produced PDFs with the requested information and gave those files to WIRE-data. In addition, the records requested were offered to WIREdata, by all three municipalities, in written form shortly after its requests were made, demonstrating good faith efforts to satisfy such requests quickly. The PDF files satisfied the open records requests of WIRE-data, as its initial requests were worded. Our holdings in the present case are based on WIREdata's initial requests because the enhanced requests were not properly submitted to the relevant authorities. Accordingly, we need not address whether the municipalities' responses satisfied WIREdata's purported "enhanced requests" because WIREdata's communications with Pelkey and with the independent contractor assessors did not constitute appropriate enhanced requests to authorities.

¶ 94. WIREdata's attorney admitted at oral argument before this court that the "enhanced" requests had not been submitted to the municipalities.[17] The "en-

---

[17] A later, coincidental viewing of an "enhanced" request, which was forwarded to a city's or a village's attorney by a

hanced" requests were submitted directly to Pelkey or to the independent contractor assessors, who are not authorities under the open records law. Accordingly, WIREdata now erroneously tries to claim that the PDF files were inappropriate because of the company's later "enhanced" requests.

¶ 95. Wisconsin Stat. § 19.32(2) defines a "record" as "any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless of physical form or characteristics, which has been created or is being kept by an authority." The statute further defines a "record" as including, but not being limited to, "handwritten, typed or printed pages, maps, charts, photographs, films, recordings, tapes (including computer tapes), computer printouts and optical disks." Wis. Stat. § 19.32(2). The statute specifically excludes from its definition of a "record" any "drafts, notes, preliminary computations and like materials prepared for the originator's personal use or prepared by the originator in the name of a person for whom the originator is working; . . . materials to which access is limited by copyright, patent or bequest . . . ." *Id.*

██

¶ 96. There is no dispute that WIREdata's requests were for records within the meaning of the statute. The question is whether the PDFs supplied by Grota to WIREdata fulfilled WIREdata's initial requests to the municipalities, which were for "electronic/digital" copies. PDF files are "electronic/digital" files, as WIREdata conceded at oral argument. Thus, despite the fact that the PDF files did not have all of the characteristics that

---

contractor, was not sufficient to cure the lack of a proper submission of an "enhanced" request to the municipality itself.

WIREdata wished (that is, WIREdata could not easily manipulate the data), the PDF files did fulfill WIREdata's initial requests as worded. In addition, the records requested were offered to WIREdata, by all three municipalities, in written form shortly after its requests were made, demonstrating good faith efforts to satisfy such requests quickly.[18]

¶ 97. We disagree with the court of appeals' statement that requesters must be given access to an authority's electronic databases to examine them, extract information from them, or copy them. *See WIREdata, Inc.*, 298 Wis. 2d 743, ¶¶ 1, 3, 63, 64, 65, 70. We share the DOJ's concern, as expressed in its amicus brief, that allowing requesters such direct access to the electronic databases of an authority would pose substantial risks. For example, confidential data that is not subject to disclosure under the open records law might be viewed or copied. Also, the authority's database might be damaged, either inadvertently or intentionally. We are satisfied that it is sufficient for the purposes of the open records law for an authority, as here, to provide a copy of the relevant data in an appropriate format.

¶ 98. In summary, we are satisfied that the court of appeals was mistaken in concluding that the petitioners and the cross-petitioners had not fulfilled WIREdata's initial open records requests, once they produced PDFs with the requested information and gave those files to WIREdata. In addition, all three municipalities offered the requested records to WIREdata in written form shortly after its requests were

---

[18] We do not address the issue of whether providing the data in written form would satisfy Wis. Stat. § 19.35(1)(b).

made. Such offers demonstrated good faith efforts to provide WIREdata with the requested information quickly.

## VIII

¶ 99. The sixth issue before us on review is whether the fees charged to WIREdata were fees that complied with the open records law.

¶ 100. On review, Grota argues that the figure he quoted to WIREdata of $3,100 was the actual amount or fee that it would have cost to provide the requested "enhanced" data. Grota explains that the $3,100 figure was based on a trial run attempting to provide the requested information in a text format, which WIREdata demanded in its "enhanced" requests. Grota argues that, because the $3,100 price accompanied an agreement to provide the requested "enhanced" data, it was an actual estimated cost, which comports with the requirements of Wis. Stat. § 19.35(3). Furthermore, Grota argues that the complexity of WIREdata's "enhanced" requests does not lend itself to a simplistic application of § 19.35(3). Grota explains that the price Pelkey had quoted to WIREdata of $6,600 was merely a business proposition that included substantial data formatting and annual updates to the data.

¶ 101. On review, WIREdata claims that Pelkey admitted that the database could be copied for substantially less than the $6,600 he requested. WIREdata alleges that Grota was attempting to charge a fee that would result in a profit. As a result, WIREdata argues that the fees that Grota attempted to charge the company exceeded the actual, necessary and direct costs allowed under Wis. Stat. § 19.35(3).

██

¶ 102. For the reasons discussed in detail below, we hold that, because no fees were actually charged to WIREdata for the information provided in the PDF format, the municipalities did not violate the open records law.

¶ 103. Wisconsin Stat. § 19.35(3)(a) states, "An authority may impose a fee upon the requester of a copy of a record which may not exceed the actual, necessary and direct cost of reproduction and transcription of the record, unless a fee is otherwise specifically established or authorized to be established by law." As a result, the authority may not make a profit on its response to an open records request.

██

¶ 104. As this court has noted, an authority under the open records law "is not required, by itself, to bear the costs of producing documents in response to [an open records law] request." *Osborn,* 254 Wis. 2d 266, ¶ 46. As we stated, in that case, under Wis. Stat. § 19.35(3), an authority may impose a fee on the records requester "for the location, reproduction or photographic processing of the requested records, but the fee may not exceed the actual, necessary and direct cost of complying with the open records requests." *Id.*

¶ 105. The record reflects that, in early 2004, Assessment Technologies, through Grota Appraisals, sent a copy in PDF format of Port Washington's assessment records "free of charge" to WIREdata. The records were on a compact disc, and WIREdata admitted that the records were a "digital/electronic version" of the requested data for Port Washington. The record also reflects that, in early 2004, Grota Appraisals sent a copy in PDF format of Sussex's assessment records "free of charge" to WIREdata. The records were on a compact

449

disc, and WIREdata admitted that the records were a "digital/electronic version" of the requested data for Sussex. Furthermore, the record also reflects that Grota sent to WIREdata a copy of Thiensville's assessment records in PDF format. There is no information in the record before us on review to contradict the logical assumptions that this PDF also was sent to WIREdata free of charge and that WIREdata also considered that file to be a "digital/electronic version" of the requested data for Thiensville.

¶ 106. It is important to note that the record before us reflects that, at Grota's deposition, WIREdata's attorney conceded that WIREdata would have taken the requested data "in any format, in any digital mode." Additionally, WIREdata's Chief Technology Officer, Tom Curtis, agreed during his deposition that, unlike the "enhanced" requests, WIREdata's "initial" requests did not "say anything about comma delimited ASCII files[.]"

¶ 107. Because we do not have a sufficient record before us to determine what an appropriate fee would have been for the provision of "enhanced" data for all three municipalities, we will not address that issue further, except to note that nothing in this opinion should be viewed as changing or modifying our prior case law that an authority may charge fees only as provided under Wis. Stat. § 19.35(3)(a), fees that reflect the actual, necessary, and direct costs of providing the information. However, we agree with the comment in the amicus brief of the DOJ that an authority may charge a requester for the authority's actual costs in complying with the request, such as any computer programming expenses or any other related expenses.

We reiterate that an authority may not make a profit, but an authority may recoup all of its actual costs.

¶ 108. In summary, we hold that, because no fees were actually charged for the information the municipalities provided to WIREdata in the PDF format, the municipalities did not violate the open records law.

## IX

¶ 109. We hold as follows on the issues: based on the facts of the present case, WIREdata did not properly commence the mandamus actions against the municipalities under the open records law, pursuant to Wis. Stat. § 19.37(1), because the municipalities had not denied WIREdata's requests for the records before WIREdata filed the mandamus actions; WIREdata's initial written requests were not insufficient as a matter of law as to time and subject matter; a municipality's independent contractor assessor is not an authority under the open records law, so that the independent contractor assessor is not a proper recipient of an open records request; a municipality may not avoid liability under the open records law by contracting with an independent contractor assessor for the collection, maintenance, and custody of its property assessment records and by then directing any requester of those records to the independent contractor assessor who has custody of the sought-after records; the court of appeals was mistaken in concluding that the petitioners and the cross-petitioners had not fulfilled WIREdata's initial open records requests, once they produced PDF files with the requested information and gave those files to WIREdata; and, because no fees were actually charged for the information the municipalities provided to WIREdata in the PDF format, the municipalities did

not violate the open records law. Accordingly, the municipalities are not liable for any damages in the present action.

¶ 110. We reverse in part and affirm in part the decision of the court of appeals. *WIREdata, Inc.,* 298 Wis. 2d 743, ¶¶ 2, 3, 67–70. In order to assist the reader in understanding our determinations, in relation to that decision, we disagree with the court of appeals' specific holdings as follows: that the three municipalities denied the open records requests of WIREdata and, thus, violated the open records law; that the PDFs were insufficient to comply with such open records requests; that the open records law requires access to the computerized database[19]; that the "enhanced" demands did not require the creation of new records; and that WIREdata is entitled to fees and costs from each of the municipalities. However, we agree with the court of appeals' specific holdings as follows: that the municipalities are the responsible authorities under the open records law; that such responsibility cannot be shifted to independent contractor assessors; and that the initial written requests of WIREdata were valid and, thus, were not insufficient as to subject matter and length of time.

[19] The court of appeals' decision on this point may have been misinterpreted by some commentators as "compelling access to the original database that contained metadata that a digital copy did not contain." *See* Leanne Holcomb & James Isaac, *Wisconsin's Public-Records Law: Preserving the Presumption of Complete Public Access in the Age of Electronic Records,* 2008 Wis. L. Rev. 515, 559, n.272. We note that the court of appeals' decision on this issue did not specifically discuss metadata, but merely stated that WIREdata must be given access to the requested data "whatever its physical form or characteristics." *WIREdata, Inc.,* 298 Wis. 2d 743, ¶ 64.

*By the Court.*—The decision of the court of appeals is reversed in part and affirmed in part, and these cases are remanded to the circuit courts involved for actions consistent with this opinion.

¶ 111. LOUIS B. BUTLER, Jr., J., did not participate.

¶ 112. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I join the majority opinion except Part III in which the majority opinion determines that the municipalities did not deny WIREdata's open records requests. Majority op. ¶ 49.[1]

¶ 113. All three municipalities referred WIREdata's open records request to an independent contractor assessor. Sussex and Thiensville each directed WIREdata's request to their independent contractor assessor, Grota Appraisals.[2] Port Washington asked WIREdata to direct its request to its independent contractor assessor, Matthies Assessments.[3]

¶ 114. Each municipality's independent contractor assessor denied WIREdata's request for the records after the receiving the request on referral from the municipality. Sussex's assessor, Grota Appraisals, forwarded WIREdata's request to yet another independent contractor, Andrew Pelkey, who refused to comply with

---

[1] "If a municipality withholds a record or delays granting access, the requester may immediately bring an action for mandamus seeking release of the record." *WTMJ, Inc. v. Sullivan,* 204 Wis. 2d 452, 461, 555 N.W.2d 140 (Ct. App. 1996) (quoting *State ex rel. Auchinleck v. Town of LaGrange,* 200 Wis. 2d 585, 592–93, 547 N.W.2d 587 (1996)).

[2] Majority op., ¶¶ 12, 28.

[3] Majoirty op., ¶ 36.

WIREdata's request except on payment of a $6,600 fee.[4] Grota Appraisals also, according to the majority opinion, failed even to respond to the request made upon Thiensville until two months after the request had been made.[5] Port Washington's assessor, Matthies Assessments, expressly informed WIREdata that it was prohibited from complying with WIREdata's request.[6]

¶ 115. Although I agree as a general matter with the majority opinion that "a communication from an independent contractor assessor should not be construed as a denial of an open records request,"[7] I do not agree that the same is true when an open records request is directed to a proper governmental authority under the open records law and the authority chooses to refer the request to an independent contractor assessor. The municipalities in the present case referred WIREdata's requests to their independent contractor assessors and thus must be held responsible for their assessors' responses to WIREdata's requests.

¶ 116. For the reasons set forth, I write separately on the issue of the relationship of the municipalities

---

[4] Majority op., ¶¶ 12, 16.

Counsel for Sussex also sent WIREdata a letter characterizing WIREdata's open records request as involving, in part, a private "business transaction" between WIREdata and Grota Appraisals and not involving Sussex's duties under the open records law. Majority op., ¶ 20.

[5] Majority op., ¶¶ 28, 31.

Alternatively, the record may be read to suggest that Grota Appraisals forwarded the Thiensville request to Richard Pelkey (just as it did for the Sussex request) and that Pelkey's demand for a $6,600 fee pertained to the request made upon Thiensville as well as to the request upon Sussex.

[6] Majority op., ¶ 37.

[7] Majority op., ¶ 77.

and assessors when a municipality refers an open record request to an assessor to respond on behalf of the municipality.